**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

INGRID YAMILETH CASTRO-PEREZ,
                    *Petitioner,*

          v.

ALBERTO R. GONZALES,* Attorney
General,
                    *Respondent.*

No. 03-73444

Agency No.
A77-620-333

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 15, 2005**
San Francisco, California

Filed June 1, 2005

Before: John T. Noonan, David R. Thompson, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Thompson

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

5937

**COUNSEL**

Phyllis A. Beech, Fresno, California, for the petitioner.

Shelly R. Goad, United States Department of Justice, Washington, D.C., for the respondent.

**OPINION**

THOMPSON, Senior Circuit Judge:

Petitioner Ingrid Yamileth Castro-Perez, a young woman from Honduras, petitions for review of the Board of Immigration Appeals' ("BIA") summary affirmance without opinion of an Immigration Judge's ("IJ") denial of her applications for asylum, withholding of removal, and relief under the Convention Against Torture. We have jurisdiction under 8 U.S.C. § 1252.

Because the record before us does not compel a reasonable factfinder to find that Castro-Perez established that her ground of alleged persecution, rape by the man she dated in Honduras, is a crime the Honduran government is unable or unwilling to control, we deny her petition for asylum and for withholding of removal. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). We also deny her claim for relief under the Convention Against Torture, because she has not "specifically and distinctly argued and raised" that issue in her petition to this court. *See Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

**I**

**BACKGROUND**

During late 1998 to 1999, Castro-Perez, then a 17-year-old living in Honduras, was dating a young man named Marlo Scott Hernandez, who was a member of a powerful local criminal gang. In October 1998, Hernandez raped Castro-Perez. She did not report the rape to the police because she believed the police would not investigate a date rape, and because she was afraid of how her father would react. She continued to see Hernandez, feeling obligated to do so and fearing that she could never marry another man because she was no longer a virgin.

Hernandez raped Castro-Perez again and she became pregnant. She did not report that rape either. Instead, she fled to the United States in June 1999 intending to live with her sister, who was residing in Colorado. Castro-Perez was apprehended while entering the United States from Mexico and detained. She was released into the custody of her sister, and while in the United States gave birth to a baby boy in January 2000.

On March 15, 2001, Castro-Perez filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. At her hearing she testified she was afraid to return to Honduras for fear that Hernandez and his friends would find her and her son and harm them. She testified she believed the Honduran police would be of no help. She also testified Hernandez had sworn to find her and had attempted to enter the United States on two occasions to do so. In support of her claim, she submitted the U.S. Department of State's *Country Report on Human Rights Practices for 2000* pertaining to Honduras, hereinafter *Country Report*, which states that the Honduran government outlaws rape, including spousal rape, with punishment ranging from 3 to 9 years' imprisonment.[1]

While the IJ found Castro-Perez to be credible, he denied her request for asylum, finding that her "fear was arousing from and by an individual with whom she had some kind of relationship," and that she "failed to demonstrate a country-wide persecution." The IJ likewise denied her requests for

---

[1]The Penal Code of Honduras' definition for violacion (rape) is: "Carnal intercourse with a person of one or the other sex by means of violence or by threat of causing a grave and imminent harm [to] a passive subject, that subject's spouse or live-in-companion, or one of his or her relatives to the fourth degree of consanguinity or the second degree of affinity, constitutes the crime of rape." *Código penal de Honduras, Libro II Parte Especial, Titulo II, Articulo 140*. We take judicial notice of this law. *Cf. Dulles v. Katamoto*, 256 F.2d 545, 547 (9th Cir. 1958) (taking judicial notice of Japanese law).

withholding of removal and relief under the Convention Against Torture. The BIA summarily affirmed the IJ's decision without opinion. Castro-Perez petitions this court for review.

## II

## DISCUSSION

When, as here, the BIA affirms the IJ's decision without opinion, the order of the IJ "constitutes the final agency determination," and it is that decision which we review. *Halaim v. INS*, 358 F.3d 1128, 1131 (9th Cir. 2004). When the IJ expressly determines the petitioner is credible, this court must accept the petitioner's testimony as true. *Id.*

[1] To be eligible for asylum, Castro-Perez must demonstrate she is a refugee. 8 U.S.C. § 1158(b)(1). A refugee is defined as a person who is unable or unwilling to return to her home country because of a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A); *see INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 (1987). "[A]n alien who establishes past persecution is presumed to have a well-founded fear of future persecution." *Prasad v. INS*, 101 F.3d 614, 617 (9th Cir. 1996).

Castro-Perez asserts that she is a member of a particular social group, and that the rapes she suffered constituted past persecution for which the Honduran government is responsible, because it is unable or unwilling to control rape in that country. *See Navas v. INS*, 217 F.3d 646, 655-56 (9th Cir. 2000).

[2] Even if we were to assume, without deciding, that Castro-Perez is a member of a particular social group and that the rapes she suffered were persecution because of her membership in that group, her asylum claim fails because she has

not shown that an agent of the government of Honduras committed the rapes, or that the government of Honduras is unable or unwilling to control rape in that country.

**[3]** Castro-Perez testified that she did not report her rapes to the police because she "thought they were not willing to do anything because they would say that we were boyfriend and girlfriend and that they would not say or think that that was [not] normal." She also testified she was afraid of how her father, who had beaten her in the past, would react. Apart from this testimony, which does not compel a finding that the Honduran government is unwilling or unable to control rape in that country, the record is limited to the information contained in the *Country Report* profile of Honduras. That information is not particularly enlightening.

The *Country Report* contains evidence that domestic violence is widespread despite attempts to strengthen domestic abuse law. However, Honduras appears to treat rape separately from "domestic violence" because domestic violence is defined as "any act harming the bodily integrity of a woman which was not classified as a crime in the Penal Code." Rape is classified as a crime in the Penal Code. The *Country Report* states with respect to rape that: "The penalties for rape are relatively light, ranging from 3 to 9 years' imprisonment. All rapes are considered public crimes, so a rapist can be prosecuted even if he marries his victim."

**[4]** Crediting Castro-Perez's testimony, and considering the other evidence in the record before us, we are unable to conclude that a reasonable trier of fact would be compelled to find that the Honduran government must bear some responsibility for Castro-Perez's rapes because it is either unable or unwilling to control rape in that country. Castro-Perez bore the burden of establishing that factor. 8 C.F.R. §§ 208.13(a) & 16(b). She did not carry that burden. Accordingly, we must deny her petition for review of the denial of her asylum claim. Because she failed to establish eligibility for asylum, we must

also deny her petition for review of the denial of her claim for withholding of removal. *Ghaly v. INS*, 58 F.3d 1425, 1429 (9th Cir. 1995).

**[5]** Castro-Perez also sought relief under the Convention Against Torture. To obtain such relief, she had to show it is "more likely than not that she would be tortured if removed." 8 C.F.R. § 1208.16(c)(2). Her only assertion in support of this claim is that "[i]nasmuch as the standard of withholding of removal under the Convention Against Torture is the same as that for restriction on removal, she is likewise entitled to withholding." This statement is incorrect; this court has specifically stated the standards are distinct. *See Kamalthas v. INS*, 251 F.3d 1279, 1283 (9th Cir. 2001). Because Castro-Perez has not "specifically and distinctly argued and raised" the issue of relief under the Convention Against Torture, she has waived that claim. *See Arpin*, 261 F.3d at 919.

PETITION DENIED.