**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAFAEL CASTRO-MARTINEZ,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 08-70343

Agency No.
A088-515-684

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted January 12, 2011*
Pasadena, California

Filed April 15, 2011
Amended December 5, 2011

Before: M. Margaret McKeown, William A. Fletcher, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Judith Marty, Fullerton, California, for the petitioner.

Gregory G. Katsas, Assistant Attorney General, Civil Division, Mary Jane Candaux, Assistant Director, Aimee J. Frederickson, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

---

## ORDER

The opinion filed on April 15, 2011, is amended as follows:

1. At page 5118 of the slip opinion (641 F.3d 1103, 1107), omit the following sentence and citation from the end of the paragraph at the top of the page:

> Violence or discrimination inflicted by private parties does not constitute persecution if it is not condoned by the state and if the state takes reasonable steps to prevent and respond to it. *See Gomes v. Gonzales*, 429 F.3d 1264, 1267 (9th Cir. 2005); *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995).

2. At page 5118 of the slip opinion (641 F.3d at 1108), insert the following at the end of the paragraph beginning "Likewise," after "*See Baballah v. Ashcroft*, 367 F.3d 1067, 1078 (9th Cir. 2004)":

> As we have held previously, "[w]here the persecutor is not a state actor, 'we consider whether an applicant reported the incident to police, because in such cases a report of this nature may show governmental inability to control the actors.' " *Rahimzadeh v. Holder*, 613 F.3d 916, 921 (9th Cir. 2010) (quoting *Baballah*, 367 F.3d at 1078).

3. At pages 5118-19 of the slip opinion (641 F.3d at 1108), replace the first citation and beginning of the next sentence:

*Rahimzadeh v. Holder*, 613 F.3d 916, 921 (9th Cir. 2010). An

with the following:

> *Id.* Here, the matter is complicated by the fact that Castro was between the ages of six and ten years when the attacks occurred. *See Hernandez-Ortiz v. Gonzalez*, 496 F.3d 1042, 1046 (9th Cir. 2007) (holding that when the petitioner is a child, the IJ must assess the alleged persecution from a child's perspective). We have never held that any victim, let alone a child, is obligated to report a sexual assault to the authorities, and we do not do so now.
>
> Without any report, however, there is a "gap in proof about how the government would [have] respond[ed]" had Castro reported the attacks. *Rahimzadeh*, 613 F.3d at 922. Among other avenues, an

4. At pages 5118-19 of the slip opinion (641 F.3d at 1108), replace the text of footnote 1 with:

> Contrary to what Castro argues, the BIA did not impose a "reporting requirement" but regarded the lack of a report of the abuse as one factor in its assessment of whether Castro had sufficiently established the Mexican government's unwillingness or inability to control his attackers. The BIA concluded that, on the record as a whole, Castro had "not demonstrated that the Mexican government was unable or unwilling to protect him from harm."

5. At page 5119 of the slip opinion (641 F.3d at 1108), replace "unwillingness" in the first full sentence with "lack of ability or willingness."

6. At page 5119 of the slip opinion (641 F.3d at 1108), omit the following from the end of the first paragraph:

at 922. In other words, the applicant need not have reported the crime if he can demonstrate that doing so would have been futile, or that contacting the authorities would have subjected him to further abuse. *Ornelas-Chavez*, 458 F.3d at 1057-8.

7.   At page 5119-20 of the slip opinion (641 F.3d at 1108), replace the paragraph beginning with "In this case" and ending with " 'unwillingness to control rape.' *Id*." with the following:

> An applicant can also meet his burden by "demonstrating that a country's laws or customs effectively deprive the petitioner of any meaningful recourse to governmental protection" or by "convincingly establish[ing] that [going to the authorities] would have been futile or would have subjected [the individual] to further abuse." *Id*. at 921-22.

> Beginning with the proposition that a victim is not obligated to report the attacks, we look to the record to determine whether Castro met his burden to "fill in the gaps" and show that the government would have been unable or unwilling to control his attackers. Castro's primary reason for not contacting the authorities was that he believed the police would not have helped him. However, such a statement, without more, is not sufficient to fill the gaps in the record regarding how the Mexican government would have responded had Castro reported his attacks. *See Castro-Perez v. Gonzales*, 409 F.3d 1069, 1072 (9th Cir. 2005).

8.   At page 5120 of the slip opinion (641 F.3d at 1108), omit the sentence at the beginning of the first full paragraph:

> Here, it was not unreasonable for the BIA to perceive Castro's explanation for not contacting the authorities to be less than persuasive.

9. At page 5120 of the slip opinion (641 F.3d at 1108), in the second sentence of the first full paragraph, replace "argued" with "also testified."

10. At page 5120 of the slip opinion (641 F.3d at 1108), replace the end of the last sentence of the first full paragraph:

> child, which is a crime under Mexican law.

with the following:

> young child or that authorities were unable to provide a child protection against rape.

11. At page 5120 of the slip opinion (641 F.3d at 1108), in the first sentence of the second full paragraph, replace "claimed" with "stated."

12. At page 5120 of the slip opinion (641 F.3d at 1108-09), in the second full paragraph, replace the section beginning with "But the record" and ending with "prosecute homophobic crimes" with the following:

> But none of these reports compel the conclusion that the police would have disregarded or harmed a male child who reported being the victim of homosexual rape by another male.

13. At pages 5120-21 of the slip opinion (641 F.3d at 1109), replace the paragraph:

> In sum, while we do not diminish the trauma Castro experienced, substantial evidence supported the BIA's conclusion that Castro's failure to report the crime undermined his claim that he was unable to seek protection from the state against his abusers. *See Ornelas-Chavez*, 458 F.3d at 1057; Rahimzadeh, 613 F.3d at 920-23. Because Castro did not meet his

burden to show that the government was unable or unwilling to control his attackers, he failed to demonstrate that he had been the victim of past persecution.

with the following:

In sum, while we do not diminish the trauma Castro experienced, substantial evidence supported the BIA's conclusion that Castro did not meet his burden to show that the government was unable or unwilling to control his attackers and therefore failed to demonstrate that he had been the victim of past persecution.

14.   At page 5121 of the slip opinion (641 F.3d at 1109), replace the first paragraph under the heading "B. Fear of future prosecution" with the following three paragraphs:

Substantial evidence also supported the BIA's conclusion that Castro failed to demonstrate a well-founded fear of future persecution. To establish a well-founded fear of future persecution, an applicant must demonstrate that his fear of persecution is subjectively genuine and objectively reasonable. *Ahmed v. Keisler*, 504 F.3d 1183, 1191 (9th Cir. 2007). As there was no adverse credibility determination, we accept that Castro's fear of future persecution was genuine. *See Li v. Holder*, 559 F.3d 1096, 1107 (9th Cir. 2009).

To establish that his fear of persecution was objectively reasonable, Castro could have demonstrated that he was a member of a disfavored group against which there was a systematic pattern or practice of persecution, or that he was singled out for persecution. *See generally Wakkary v. Holder*, 558 F.3d 1049 (9th Cir. 2009) (citing 8 C.F.R.

§ 1208.13(b)(2)(iii)). As to the latter, Castro did not argue that any government actor had singled him out for persecution. As to the former, Castro cited evidence of societal discrimination against gays in Mexico, and attacks on gay men committed both by private parties and the police, to argue that the Mexican government systematically harmed gay men and failed to protect them from violence. The record did not compel this conclusion, however, particularly in light of recent country reports.

The BIA noted country reports in the record indicating the Mexican government's efforts to prevent violence and discrimination against homosexuals. These efforts have increased in recent years. Mexican law prohibits several types of discrimination, including bias based on sexuality, and it requires federal agencies to promote tolerance. In April 2005, the Mexican government launched a radio campaign to fight homophobia in conjunction with Conasida, the National Center to Prevent and Control HIV/AIDS. Country reports submitted by Castro noted the ongoing improvement of police treatment of gay men and efforts to prosecute homophobic crimes.

15. At page 5122 of the slip opinion (641 F.3d at 1110), replace the short citation:

*Gomes*, 429 F.3d at 1266.

with the following long citation:

*Gomes v. Gonzales*, 429 F.3d 1264, 1266 (9th Cir. 2005).

With the opinion as amended, the panel voted to deny both the petition for rehearing and petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and petition for rehearing en banc are DENIED. No further petition for rehearing and/or petition for rehearing en banc may be filed.

---

**OPINION**

CLIFTON, Circuit Judge:

Rafael Castro-Martinez ("Castro"), a native and citizen of Mexico, timely petitions this court for review of a decision of the Board of Immigration Appeals affirming an immigration judge's denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture. We conclude that substantial evidence supported the BIA's conclusion that Castro failed to demonstrate past persecution or a well-founded fear of future persecution on account of his homosexuality or HIV-positive status. The sexual abuse Castro suffered was not inflicted by government actors, and the BIA had sufficient basis to conclude that Castro failed to show that the government was unable or unwilling to control his attackers. Accordingly, we deny the petition.

## I.  Background

Rafael Castro-Martinez entered the United States without inspection in 1995. He subsequently resided in California. Castro, who is homosexual, believes that during his time in this country he contracted HIV. He found out he is HIV-positive in June 2004.

In 2007, Castro returned to Mexico for two weeks to visit his mother. He sought to reenter the United States at San Ysi-

dro, where he turned himself in to immigration authorities and requested asylum. He was issued a Notice to Appear and charged with removability for entering the United States without valid travel documents. He conceded removability in a hearing before the immigration judge. He filed applications for asylum, withholding of removal, and protection under the Convention Against Torture, claiming that he had experienced past persecution in Mexico as a homosexual male and that if removed to Mexico he would face persecution and torture on account of his homosexuality and his HIV-positive status.

Castro's claim of past persecution was based on sexual abuse he experienced as a child. In testimony that the immigration judge found credible, Castro testified that he had been teased and harassed for being gay since he was very young. When he was between six and ten years old, he was raped brutally and repeatedly by two male teenagers. Castro believed he was victimized because of his homosexuality and feminine characteristics. He never told his parents about the abuse, because his abusers threatened that they would beat him and kill his parents if he told them. Castro asserted that given these threats, and the stigma associated with homosexuality in Mexico, it would have been unreasonably dangerous for him to have reported the sexual abuse to his teachers, neighbors, or parents. Moreover, he claimed that because the Mexican police are corrupt and ineffective in dealing with crimes against homosexuals, it was unlikely that reporting would have brought an effective response or protection from the state. Castro contended that the Mexican government was unwilling and unable to protect him from the sexual abuse and that this constituted past persecution on account of his sexual orientation. Castro argued that this past persecution established a well-founded fear of future persecution under 8 U.S.C. § 1101(a)(42)(A).

Castro argued further that even if he was not held to have suffered from past persecution, he nonetheless qualified for asylum based on having a well-founded fear of future perse-

cution in Mexico, where the government systematically harms gay men. He testified that if he now returned to Mexico he feared that he would be beaten, tortured or killed for his sexual orientation. To support his fear, Castro submitted country reports documenting societal discrimination against homosexuals in Mexico and attacks on gay men committed by private parties. He also presented evidence of widespread police corruption in Mexico and incidents of police violence against homosexuals. Castro also claimed to have a well-founded fear of future persecution on account of his HIV-positive status. He testified that he believes HIV medication is not available for gays in Mexico due to discrimination against homosexuals and that he will die "in a slow and torturous way for not having the medication that I need."

The immigration judge found Castro removable and denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture. The IJ concluded that Castro failed to establish eligibility for asylum because he did not demonstrate past persecution or the likelihood of future persecution at the hands of the government or groups the government was unwilling or unable to control. *See Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997). The IJ found that Castro had not presented any evidence that the government systematically harms gay men or that it is unwilling to control those who would commit violence against homosexuals. The IJ pointed to country reports in the record indicating that Mexican law prohibits discrimination on the basis of sexual orientation and that the Mexican government has made successful efforts to promote tolerance of homosexuals.

The BIA dismissed Castro's appeal. The Board concluded that Castro had failed to establish eligibility for asylum because he had not shown that the Mexican government had been unwilling or unable to protect him from his abusers, or that homosexuals and HIV-positive individuals are subjected to officially-sanctioned discrimination in Mexico. The Board

noted that Castro did not report the sexual abuse to the authorities and that he failed to provide a compelling reason as to why seeking state protection would have been futile. *See Ornelas-Chavez v. Gonzales*, 458 F.3d 1052, 1057-58 (9th Cir. 2006). The Board further concluded that Castro had not demonstrated that he would be unable to secure treatment for HIV in Mexico, or that lack of access to HIV treatment was a problem experienced only by homosexuals. Since Castro failed to meet his burden of proof for asylum, he also failed to establish his eligibility for withholding of removal. The Board also denied his CAT claim, holding that Castro did not demonstrate that it was more likely than not that he would be tortured in Mexico.

## II. Discussion

We review the BIA's construction and application of the law de novo. *See Murillo-Espinoza v. INS*, 261 F.3d 771, 773 (9th Cir. 2001). We must uphold the BIA's factual findings if supported by "reasonable, substantial, and probative evidence on the record." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Our review is "confined to the BIA's decision and the bases upon which the BIA relied." *Navas v. INS*, 217 F.3d 646, 658 n. 16 (9th Cir. 2000).

### A. Past persecution

**[1]** To be eligible for asylum, an alien must demonstrate that he is unable or unwilling to return to his home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or a political opinion. 8 U.S.C. § 1101(a)(42)(A). Homosexual men in Mexico can constitute a social group for the purpose of an asylum claim. *See Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1087-89 (9th Cir. 2005). Persecution is the "infliction of suffering or harm . . . in a way regarded as offensive" on the basis of one of the protected grounds. *Prasad v. INS*, 47 F.3d 336, 339 (9th Cir. 1995). To

qualify as persecution for the purpose of asylum, an act must be inflicted either by the government or by individuals or groups the government is unable or unwilling to control. *Sangha*, 103 F.3d at 1487.

[2] Substantial evidence supported the BIA's conclusion that Castro had not been the victim of past persecution as defined under the law. Although horrendous, the sexual abuse Castro experienced was not inflicted by government actors. Castro acknowledged that he had never been subjected to violence by government officials in Mexico.

[3] Likewise, evidence supported the conclusion that Castro failed to demonstrate that the government was unable or unwilling to control his attackers. Castro testified that he never reported the abuse to the authorities. In determining whether the government was unable or unwilling to control violence committed by private parties, the BIA may consider whether the victim reported the attacks to the police. *See Baballah v. Ashcroft*, 367 F.3d 1067, 1078 (9th Cir. 2004). As we have held previously, "[w]here the persecutor is not a state actor, 'we consider whether an applicant reported the incident to police, because in such cases a report of this nature may show governmental inability to control the actors.' " *Rahimzadeh v. Holder*, 613 F.3d 916, 921 (9th Cir. 2010) (quoting *Baballah*, 367 F.3d at 1078).

To be clear, "[t]he reporting of private persecution to the authorities is not . . . an essential requirement for establishing government unwillingness or inability to control attackers."[1] *Id.* Here, the matter is complicated by the fact that Castro was

---

[1] Contrary to what Castro argues, the BIA did not impose a "reporting requirement" but regarded the lack of a report of the abuse as one factor in its assessment of whether Castro had sufficiently established the Mexican government's unwillingness or inability to control his attackers. The BIA concluded that, on the record as a whole, Castro had "not demonstrated that the Mexican government was unable or unwilling to protect him from harm."

between the ages of six and ten years when the attacks *occurred. See Hernandez-Ortiz v. Gonzalez*, 496 F.3d 1042, 1046 (9th Cir. 2007) (holding that when the petitioner is a child, the IJ must assess the alleged persecution from a child's perspective). We have never held that any victim, let alone a child, is obligated to report a sexual assault to the authorities, and we do not do so now.

**[4]** Without any report, however, there is a "gap in proof about how the government would [have] respond[ed]" had Castro reported the attacks. *Rahimzadeh*, 613 F.3d at 922. Among other avenues, an applicant can demonstrate the government's lack of ability or willingness to respond to violence by "establishing that private persecution of a particular sort is widespread and well-known but not controlled by the government" or "showing that others have made reports of similar incidents to no avail." *Id.*

An applicant can also meet his burden by "demonstrating that a country's laws or customs effectively deprive the petitioner of any meaningful recourse to governmental protection" or by "convincingly establish[ing] that [going to the authorities] would have been futile or would have subjected [the individual] to further abuse." *Id*. at 921-22.

Beginning with the proposition that a victim is not obligated to report the attacks, we look to the record to determine whether Castro met his burden to "fill in the gaps" and show that the government would have been unable or unwilling to control his attackers. Castro's primary reason for not contacting the authorities was that he believed the police would not have helped him. However, such a statement, without more, is not sufficient to fill the gaps in the record regarding how the Mexican government would have responded had Castro reported his attacks. *See Castro-Perez v. Gonzales*, 409 F.3d 1069, 1072 (9th Cir. 2005).

**[5]** Castro also testified that he could not report the sexual abuse because of threats from his attackers. While private

threats may explain why an asylum applicant did not report the crime, "the question in an asylum case is whether the [authorities] could and would provide protection." *Rahimzadeh*, 613 F.3d at 923. As the BIA observed, there was no evidence in the record that Mexican authorities would have ignored the rape of a young child or that authorities were unable to provide a child protection against rape.

**[6]** Castro also stated that he was afraid of contacting the police because they would likely abuse him on account of his homosexuality. Castro presented country reports documenting police corruption and participation in torture, abuse, and trafficking, as well as incidents of police harassment of gay men. But none of these reports compel the conclusion that the police would have disregarded or harmed a male child who reported being the victim of homosexual rape by another male.

**[7]** In sum, while we do not diminish the trauma Castro experienced, substantial evidence supported the BIA's conclusion that Castro did not meet his burden to show that the government was unable or unwilling to control his attackers and therefore failed to demonstrate that he had been the victim of past persecution.

B.   *Fear of future persecution*

**[8]** Substantial evidence also supported the BIA's conclusion that Castro failed to demonstrate a well-founded fear of future persecution. To establish a well-founded fear of future persecution, an applicant must demonstrate that his fear of persecution is subjectively genuine and objectively reasonable. *Ahmed v. Keisler*, 504 F.3d 1183, 1191 (9th Cir. 2007). As there was no adverse credibility determination, we accept that Castro's fear of future persecution was genuine. *See Li v. Holder*, 559 F.3d 1096, 1107 (9th Cir. 2009).

To establish that his fear of persecution was objectively reasonable, Castro could have demonstrated that he was a

member of a disfavored group against which there was a systematic pattern or practice of persecution, or that he was singled out for persecution. *See generally Wakkary v. Holder*, 558 F.3d 1049 (9th Cir. 2009) (citing 8 C.F.R. § 1208.13(b)(2)(iii)). As to the latter, Castro did not argue that any government actor had singled him out for persecution. As to the former, Castro cited evidence of societal discrimination against gays in Mexico, and attacks on gay men committed both by private parties and the police, to argue that the Mexican government systematically harmed gay men and failed to protect them from violence. The record did not compel this conclusion, however, particularly in light of recent country reports.

The BIA noted country reports in the record indicating the Mexican government's efforts to prevent violence and discrimination against homosexuals. These efforts have increased in recent years. Mexican law prohibits several types of discrimination, including bias based on sexuality, and it requires federal agencies to promote tolerance. In April 2005, the Mexican government launched a radio campaign to fight homophobia in conjunction with Conasida, the National Center to Prevent and Control HIV/AIDS. Country reports submitted by Castro noted the ongoing improvement of police treatment of gay men and efforts to prosecute homophobic crimes.

**[9]** Castro also claimed to have a well-founded fear of persecution insofar as he will be unable to receive HIV treatment in Mexico because he is homosexual. Castro testified that "homosexual men are not a priority to receive medication" in Mexico. Substantial evidence supported the BIA's conclusion that, based on the documentary evidence provided by Castro, lack of access to HIV drugs is a problem suffered not only by homosexuals but by the Mexican population as a whole. The record noted the high cost of HIV drugs, lack of access to health insurance for the poor and unemployed, and possible government mismanagement of funds allocated for HIV treat-

ment. "Generalized economic disadvantage" does not rise to the level of persecution. *Raass v. INS*, 692 F.2d 596 (9th Cir. 1982). The BIA was justified in concluding that Castro failed to demonstrate that he would be deprived of treatment for HIV in Mexico because of his membership in a protected social group.

## III.  Conclusion

Substantial evidence supported the BIA's conclusion that Castro did not demonstrate that the Mexican government was unwilling or unable to control his attackers, and that he therefore failed to establish eligibility for asylum. Because Castro did not demonstrate eligibility for asylum, his claim for withholding of removal, governed by a more stringent standard, is also foreclosed. *Gomes v. Gonzales*, 429 F.3d 1264, 1266 (9th Cir. 2005). In his opening brief, Castro did not challenge the BIA's denial of his CAT claim and therefore waived it. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). Accordingly, we deny the petition for review.

**PETITION DENIED**.