**GUOQING ZHANG, Petitioner,**

v.

**Loretta E. LYNCH, Attorney General, Respondent.**

No. 12–72336.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 2015.

Filed Aug. 3, 2015.

Albert Chow, Lin & Chow, Monterey Park, CA, for Petitioner.

OIL, Paul Fiorino, Senior Litigation Counsel, DOJ–U.S. Department of Justice, Washington, DC, Chief Counsel Ice, Office of the Chief Counsel Department of Homeland Security, San Francisco, CA, for Respondent.

Before: REINHARDT and CLIFTON, Circuit Judges and DU,* District Judge.

* The Honorable Miranda M. Du, District Judge for the U.S. District Court for the District of Nevada, sitting by designation.

MEMORANDUM **

Guoqing Zhang, a native and citizen of China, petitions for review of a Board of Immigration Appeals' order dismissing his appeal from an Immigration Judge's decision denying his application for asylum, withholding of removal, and relief under the Convention Against Torture. We deny the petition.

■ Substantial evidence supports the BIA's determination that Zhang did not satisfy the requirements necessary to establish eligibility for asylum based on past persecution. Although whistle-blowing against corrupt government officials may constitute political activity sufficient to form the basis for persecution on account of political opinion, the record here does not compel such a conclusion. *See Grava v. I.N.S.*, 205 F.3d 1177, 1181 (9th Cir.2000). In order to constitute political opinion, Zhang's opposition to corruption must be "directed toward a governing institution" and not "against individuals whose corruption was aberrational." *Id.* Here, Zhang's testimony indicates that the letters he wrote only complained about his managers' aberrational conduct, and not systemic government corruption. Furthermore, substantial evidence supports the BIA's conclusion that Zhang did not demonstrate that his managers' conduct was tied to pervasive government corruption or to higher level government officials. Although the 2009 State Department Report on China supports Zhang's contention that local managers of government-owned companies are susceptible to bribes and corruption, the report also indicates that the central government has begun to combat this type of corruption. *See* U.S. Depart-

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

ment of State, *2009 Human Rights Report: China* at 29 (2010).

■ Furthermore, under the REAL ID Act, Zhang was required to demonstrate that his political opinion was "one central reason" for his persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *see Parussimova v. Mukasey,* 555 F.3d 734, 740 (9th Cir.2009). A central reason "represents more than a mere 'part' of a persecutor's motivation." *Id.* at 741. Here, the record does not compel the conclusion that the police or Zhang's managers were motivated to detain Zhang because of his perceived or actual anticorruption beliefs. *See id.* Zhang did not attempt to expose his managers' conduct to any higher authorities, such as the central government, and substantial evidence supports the BIA's determination that Zhang's arrests could more likely be explained by his interruption of his managers' dinner and his disruption of public peace.

■ Substantial evidence also supports the BIA's determination that Zhang did not satisfy the requirements necessary to establish eligibility for asylum based on a well-founded fear of future persecution. Zhang failed to show an objectively reasonable fear of future persecution, and the record does not compel a contrary conclusion. *See Castro–Martinez v. Holder,* 674 F.3d 1073, 1082 (9th Cir.2011).

■ Substantial evidence supports the BIA's denial of withholding of removal. As Zhang did not meet the lower standard of proof to establish asylum, it follows that he also did not meet the more stringent "clear probability" standard to establish eligibility for withholding of removal. *See Ahmed v. Keisler,* 504 F.3d 1183, 1199 (9th Cir.2007).

■ Finally, Zhang asserted that he established the elements necessary for CAT relief. However, Zhang's brief to the BIA made no arguments regarding CAT relief, and in his brief to this court Zhang failed to respond to the BIA's holding that the CAT issue was waived. Accordingly, the CAT argument is waived. *See Martinez–Serrano v. I.N.S.,* 94 F.3d 1256, 1259 (9th Cir.1996).

**Petition DENIED.**

REINHARDT, Circuit Judge, dissenting.

I would grant Guoqing Zhang's petition on the ground that he is eligible for a discretionary asylum determination and mandatory withholding of removal on the basis of political opinion, or alternatively imputed political opinion. Because the record before us compels the conclusion that Zhang suffered past persecution and has demonstrated a well-founded fear of future persecution, I dissent.

To qualify as a political opinion for the purpose of asylum, whistleblowing against government officials must be "directed toward a governing institution" and not "only against individuals whose conduct was aberrational." *Grava v. I.N.S.,* 205 F.3d 1177, 1181 (9th Cir.2000). "When the alleged corruption is inextricably intertwined with governmental operation," however, opposition to "such an abuse of public trust is necessarily political." *Id.*

The corrupt practices about which Zhang complained included corruption and embezzlement by the company's leader, and were inextricably intertwined with the operation of the government owned business he led. Such conduct, moreover, was hardly aberrational. Rather, the State Department Report cited by Zhang makes clear that such practices were widespread throughout China. The report states that over the course of the year, "[n]umerous leaders of state owned enterprises, who generally also hold high party rank, were

investigated for corruption," and that 106,-000 party members had been found guilty of corruption. U.S. Dep't of State, *2009 Human Rights Report: China* at 29 (2010). *See Hasan v. Ashcroft,* 380 F.3d 1114, 1120 (9th Cir.2004), *overruled on other grounds by Maldonado v. Lynch,* 786 F.3d 1155 (9th Cir.2015) (petitioner's whistleblowing constituted a political opinion because she uncovered "an institutionalized level of corruption that [went] far beyond an individual, anomalous case"); *Mamouzian v. Ashcroft,* 390 F.3d 1129, 1135 (9th Cir.2004) (petitioner's acts of protests against government corruption constituted political opinion because they were directed against the "policies and practices of the governing party, and not against the 'aberrational' practices of an individual"). That the Chinese government has initiated new steps to combat corruption only highlights its pervasiveness; no evidence in the record suggests that the government's nascent anti-corruption efforts have actually succeeded in narrowing the scope of such activities. To the contrary, the record indicates that the government's efforts have been ineffective. *See* U.S. Dep't of State at 29 ("The law provides criminal penalties for official corruption; however, the government did not implement the law effectively, and officials frequently engaged in corrupt practices with impunity.").

The majority asserts that Zhang's whistleblowing did not constitute "one central reason" for his persecution because "Zhang did not attempt to expose his managers' conduct to any higher authorities, such as the central government." The majority simply ignores the uncontroverted fact that Zhang attempted to expose this misconduct *to the local government,* sending two letters in which he complained of his managers' corruption, asserted that he had suffered retaliation, and threatened to appeal to the central government. It is

clear that Zhang's political activities constituted, at a minimum, "one central reason" for his persecution because government officials said as much following each of his two arrests. 8 U.S.C. § 1158(b)(1)(B)(i); *see Parussimova v. Mukasey,* 555 F.3d 734, 740–41 (9th Cir. 2009). Following his first arrest, the police accused Zhang of harboring a "malicious desire to oppose the government," and after arresting him a second time accused him of "work[ing] with foreign elements and . . . foreign organizations."

The majority also asserts that Zhang's first arrest is more easily explained by the altercation following his interruption of his managers' dinner. But this purported cause of Zhang's *arrest* does not come close to explaining the severity of Zhang's *persecution following his arrest,* when he was detained for seven days, repeatedly beaten, and shocked with an electric baton. That would hardly seem to be a likely response by local police officials to so minor an offense as disturbing a dinner party. Surely it is apparent, given the officers' accusations, that Zhang's attack on governmental corruption was at least "one central reason" for the police persecution of Zhang on this occasion.

Zhang's second arrest sixteen months later occurred just three days after he wrote another letter to the local government complaining of corruption and seeking benefits he contended that he was deprived of as a result of his initial whistleblowing. Following his second arrest, Zhang was subjected to further persecution: he was detained for two days, during which he was interrogated and beaten, and was then required to submit to ongoing police monitoring. No explanation for this second act of persecution by the police appears in the record other than Zhang's complaint against governmental corruption. Surely the response by the local

governmental authorities on both occasions together demonstrates beyond any doubt that even if one could conclude that Zhang did not hold a political opinion, one would nonetheless be compelled to conclude that the local government authorities imputed an anti-government political opinion to him. The BIA's decision to analyze each persecutory act in isolation, when they clearly demonstrate a pattern of persecution, constitutes a legal error that undermines its decision. In any event, because the record compels the conclusion that Zhang suffered past persecution on account of his political opinion or his imputed political opinion, he is entitled to a presumption that he has a well-founded fear of future persecution, a presumption that the government has failed to rebut. *See Recinos De Leon v. Gonzales,* 400 F.3d 1185, 1190 (9th Cir.2005).

For reasons similar to those stated above, I would hold that Zhang meets the higher standards necessary for a grant of withholding and that such decision is compelled by the record before us.

I respectfully dissent.