**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DARWIN THEODORE,<br><br>      Petitioner,<br><br>   v.<br><br>LORETTA E. LYNCH, Attorney General,<br><br>      Respondent. | No. 13-70834<br><br>Agency No. A099-905-732<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 11, 2016
Pasadena, California

Before: BERZON and OWENS, Circuit Judges and MARBLEY,[**] District Judge.

Darwin Theodore, an Indonesian citizen of Chinese ancestry and Christian

faith, seeks review of an order of the Board of Immigration Appeals ("BIA") that

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Algenon L. Marbley, District Judge for the U.S. District Court for the Southern District of Ohio, sitting by designation.

dismissed his appeal from an immigration judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252 and review the BIA's legal determinations de novo and its factual findings for substantial evidence. *Wakkary v. Holder*, 558 F.3d 1049, 1056 (9th Cir. 2009). For the reasons that follow, we deny the petition for review.

To qualify for asylum, Theodore must establish that he is a refugee within the meaning of 8 U.S.C. § 1101(a)(42)(A). *See Castro-Martinez v. Holder*, 674 F.3d 1073, 1080 (9th Cir. 2011). Theodore thus bears the burden of proving that he is unable or unwilling to return to Indonesia "because of [past] persecution or a well-founded fear of [future] persecution on account of" a protected ground. *Id.* (citing 8 U.S.C. § 1101(a)(42)(A)). Substantial evidence does not compel a finding that Theodore qualifies as a refugee under either prong.

As a threshold matter, substantial evidence supports the BIA's determination that Theodore had not suffered past persecution despite several incidents of regrettable discrimination and petty violence. *See Wakkary*, 558 F.3d at 1059-60; *Halim v. Holder*, 590 F.3d 971, 975-76 (9th Cir. 2009). Theodore credibly testified that, over the course of a decade, he suffered several incidents of schoolyard

2

bullying, harassment, and violence, including witnessing his father assaulted by a machete-wielding native Indonesian who was unwilling to pay a business debt; staying inside for a week due to fear of anti-Chinese looting during the May 1998 Jakarta rioting; getting chased and beaten by native Indonesians while visiting a beach in Bali one New Year's Eve; and fearing that his church might be bombed after several Christian churches throughout Indonesia received bomb threats in the wake of an actual bombing in Bali. As in *Wakkary* and *Halim*, however, these incidents of discrimination do not rise to the level of past persecution.

Moreover, the BIA did not fail to consider Theodore's experiences or suffering as an adolescent in rejecting his claim of past persecution. *See generally Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042 (9th Cir. 2007). Instead, the BIA properly distinguished Theodore's experiences as a teenager from the horrific events experienced firsthand by the far-younger asylum applicants in *Hernandez-Ortiz*. *Id.* at 1044 (describing nine- and seven-year old Mayan brothers who had their family and lives shattered by the Guatemalan Army).

Substantial evidence likewise supports the BIA's determination that Theodore's fear of future persecution is not objectively reasonable. Theodore did not challenge the BIA's finding that he failed to show a pattern or practice of

3

persecution against ethnic Chinese and/or Christians in Indonesia. Even under a disfavored-group analysis, Theodore failed to show a sufficient individualized risk to establish a well-founded fear of future persecution. *See Halim*, 590 F.3d at 977-80. As in *Halim*, Theodore's exposure to individual incidents of discrimination had ceased entirely for a significant period of time before his immigration to the United States. *Compare id.* at 979 ("After [the final incident], Halim continued to work and attend his university for another fifteen months without incident before he traveled to the United States."), *with* Administrative Record at 150, 203 (conceding that Theodore had not experienced any discrimination in over *four years* before traveling to the United States). *See Castillo v. INS*, 951 F.2d 1117, 1122 (9th Cir. 1991) ("When determining the objective reasonableness of an alien's claim of well-founded fear of persecution[,] the BIA may properly consider as significant a petitioner's continued safe and undisturbed residence in his homeland after the occurrence of the event which is alleged to have induced his fear."). Moreover, as in *Halim*, Theodore's family remained in Indonesia after his departure, and Theodore "has not presented any evidence that they have been targeted" in the years since, further undermining his asylum bid. *See Halim*, 590 F.3d at 979; *see also Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001) ("An applicant's claim of persecution . . . is weakened, even undercut, when similarly-situated family members continue to live

4

in the country without incident . . . ."), *superseded by statute on other grounds as stated in Ritonga v. Holder*, 633 F.3d 971, 977 (10th Cir. 2011). In sum, Theodore's asylum claim fails because he did not demonstrate "refugee" status under either the past-persecution prong or the well-founded-fear-of-future-persecution prong.

To qualify for withholding of removal, Theodore must demonstrate a "clear probability" that, if removed to Indonesia, his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Jiang v. Holder*, 754 F.3d 733, 740 (9th Cir. 2014). As we have explained, this standard "is more stringent than the well-founded fear standard for asylum." *Jiang*, 754 F.3d at 740 (citation omitted). Consequently, "because [Theodore's] asylum claim fails, [his] withholding of removal claim also fails." *Id.*

Finally, to qualify for protection under the CAT, Theodore must show "that he would more likely than not be tortured by or with the acquiescence of the [Indonesian] government if he is removed to [Indonesia]." *Bringas-Rodriguez v. Lynch*, 805 F.3d 1171, 1184 (9th Cir. 2015). Here again, the BIA's denial of relief under the CAT was supported by substantial evidence. As with Theodore's asylum and withholding-of-removal claims, the record does not compel a finding that

Theodore "more likely than not" will be tortured upon his return to Indonesia with the government's consent or acquiescence. Theodore relies on the same evidence to support his CAT claim as he does his other claims for relief: some hand-selected portions of State Department Country Condition Reports for Indonesia as well as his testimony and supporting declaration from his removal proceedings. The IJ expressly considered *all* of this evidence before denying Theodore's CAT claim, and the BIA essentially adopted the IJ's findings. Where, as here, a petitioner "points to no other evidence that he could claim the BIA should have considered in making its determination under the Convention Against Torture," the BIA may rely on its prior findings in the asylum context to deny relief. *Farah v. Ashcroft*, 348 F.3d 1153, 1157 (9th Cir. 2003).

Theodore's attack on the IJ's *legal* analysis, which the BIA adopted, also misses the mark. Theodore argues that the IJ considered only torture at the hands of the Indonesian government—not torture from others to which the government might turn a blind eye. In making this argument, however, Theodore misreads the IJ's decision. The IJ ruled as follows: "The Court finds that the respondent has not shown on this record that it is more likely than not that he will be tortured by the

6

Indonesian government *within the meaning of the regulations* upon his return . . . ." (Emphasis added). By adding the modifier "within the meaning of the regulations," the IJ expressly incorporated the full expanse of applicable regulations, including 8 C.F.R. § 1208.18(a)(1), which, in defining "torture," explains that the torture may be inflicted "by or at the instigation of *or with the consent or acquiescence of a public official or other person acting in an official capacity*." (Emphasis added). In short, the IJ did exactly what Theodore contends was required—she considered all the evidence of possible torture from the Indonesian government itself *or* from other individuals to whom the government might turn a blind eye; she merely did so by referencing the regulation defining "torture" instead of quoting that passage in full. This alone does not constitute reversible error.

PETITION DENIED.