**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

MAY 11 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SANDRA ELIZABETH RIVERA-SORTO; ASHLEY CERRITOS-RIVERA, <br><br> Petitioners, <br><br> v. <br><br> WILLIAM P. BARR, Attorney General, <br><br> Respondent. | No. 17-72380 <br><br> Agency Nos. A208-171-173 <br> A208-171-174 <br><br> MEMORANDUM<sup>*</sup> |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 4, 2020<sup>**</sup>
Pasadena, California

Before: OWENS and BADE, Circuit Judges, and MOSKOWITZ,<sup>***</sup> District Judge.

Sandra Rivera-Sorto and her minor daughter, natives and citizens of El

Salvador, petition for review of the decision of the Board of Immigration Appeals

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

("BIA") affirming an immigration judge's ("IJ") denial of their applications for withholding of removal, asylum, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

We review the agency's "legal conclusions de novo and its factual findings for substantial evidence." *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc) (citations omitted). "A finding by the IJ is not supported by substantial evidence when 'any reasonable adjudicator would be compelled to conclude to the contrary based on the evidence in the record.'" *Id.* (quoting *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014)); *see also* 8 U.S.C. § 1252(b)(4)(B). We review both the BIA's and IJ's decisions because the BIA adopted the IJ's order by citing *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994), and also offered "its own review of the evidence and law." *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011).

1. Substantial evidence supports the BIA's conclusion that Rivera is not eligible for asylum or withholding of removal. Rivera contends that she suffered past persecution, and fears future persecution, at the hands of both her husband and the Mara 18 gang because of her membership in two particular social groups— "Salvadorans who oppose and refuse to cooperate with El Salvador's gangs" and "women in El Salvador"—as well as her political opinion.

To demonstrate that she is entitled to relief because of her political opinion,

Rivera must establish that "she (1) 'had either an affirmative or imputed political opinion,' and (2) was 'targeted *on account of* that opinion.'" *Khudaverdyan v. Holder*, 778 F.3d 1101, 1106 (9th Cir. 2015) (quoting *Sagaydak v. Gonzales*, 405 F.3d 1035, 1042 (9th Cir. 2005)). Substantial evidence supports the BIA's conclusion that Rivera failed to meet her burden. The record before the agency lacks evidence that Rivera "was politically or ideologically opposed to the ideals" of El Salvador's gangs or that she was attacked because of those beliefs. *Santos-Lemus v. Mukasey*, 542 F.3d 738, 747 (9th Cir. 2008), *abrogated in part by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc). Instead, the record supports the agency's conclusion that economic and personal motives drove the Mara 18's encounters with Rivera. This is not a sufficient basis for granting relief. *See id.*; *see also Barrios v. Holder*, 581 F.3d 849, 854–55 (9th Cir. 2009) (rejecting petitioner's argument that his anti-gang opinion was basis for asylum claim even when "gang activity affects the administration of the government and the country"), *abrogated in part by Henriquez-Rivas*, 707 F.3d 1081.

2. The agency similarly did not err by rejecting either of Rivera's proposed social groups as a basis for relief. A proposed social group is cognizable if it is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Conde Quevedo v. Barr*, 947 F.3d 1238, 1242 (9th Cir. 2020) (quoting

3

*Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)).

In rejecting Rivera's first proposed group, "Salvadorans who oppose and refuse to cooperate with El Salvador's gangs," the agency concluded that Rivera failed to demonstrate both that the proposed group was defined with sufficient particularity and that it was socially distinct within Salvadoran society. The evidence in the record does not compel a contrary conclusion. *See Reyes v. Lynch*, 842 F.3d 1125, 1138 (9th Cir. 2016) (rejecting proposed social group of "former members of the Mara 18 gang in El Salvador who have renounced their membership"); *Ramos-Lopez v. Holder*, 563 F.3d 855, 858–62 (9th Cir. 2009) (rejecting petitioner's claim that he was in a particular social group as a young Salvadoran man who was recruited by gangs and refused to join), *abrogated in part by Henriquez-Rivas*, 707 F.3d 1081.

Next, even assuming that Rivera's second proposed group of "women in El Salvador" is cognizable, substantial evidence supports the BIA's conclusion that Rivera failed to establish a nexus between her membership in that group and any past persecution. *See Ayala v. Holder*, 640 F.3d 1095, 1097 (9th Cir. 2011) (per curiam) ("[A petitioner] must establish that any persecution was or will be *on account of* his membership in such group."); *see also Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017) (noting "lighter standard for the strength of the nexus" for withholding of removal than asylum). As before, the record supports

4

the BIA's conclusion that economic or personal motives drove any past persecution by the Mara 18. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) (noting a petitioner's "desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground").

Similarly, the agency did not err by concluding that the government of El Salvador was not unable or unwilling to control the country's gangs. *See Avetova-Elisseva v. INS*, 213 F.3d 1192, 1198 (9th Cir. 2000) (applicant must demonstrate that the government "'is unwilling or *unable* to control those elements of its society' committing the acts of persecution" (quoting *Mgoian v. INS*, 184 F.3d 1029, 1036 (9th Cir. 1999))). Although the record contains evidence that El Salvador has problems with gang violence, the record does not clearly compel the conclusion that the government is unable or unwilling to control gangs within the country. *See Castro-Perez v. Gonzales*, 409 F.3d 1069, 1072 (9th Cir. 2005) (concluding that Honduras' Country Report did not indicate that the government was not unable or unwilling to control rape in the country).

Likewise, to the extent Rivera's application relies on evidence of past persecution at the hands of her husband, the BIA did not err by concluding that Rivera failed to demonstrate that the government was unable or unwilling to control him. As Rivera testified, on the one occasion she called the police, officers

arrived at the couple's home and immediately removed her husband. Following that incident, Rivera did not have physical contact with her husband, except when she initiated it. We cannot conclude that this evidence compels a contrary conclusion than that reached by the BIA. *See Nahrvani v. Gonzales*, 399 F.3d 1148, 1154 (9th Cir. 2005).

3. Substantial evidence also supports the BIA's denial of Rivera's application for CAT relief. An applicant for CAT relief must show that it "is more likely than not that [s]he . . . would be tortured" if removed. 8 C.F.R. § 1208.16(c)(2). Here, the record does not compel the conclusion that it is *more likely than not* that Rivera would suffer harm rising to the level of torture if she returns to El Salvador, *see Flores-Vega v. Barr*, 932 F.3d 878, 887 (9th Cir. 2019) (denying CAT relief because applicant failed to show "a greater risk to him than any other Mexican national deported from the United States"), or that the government, or a public official, would "acquiesce" in that torture, *see Madrigal v. Holder*, 716 F.3d 499, 509–10 (9th Cir. 2013).

**PETITION FOR REVIEW DENIED.**