**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 18 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROGELIO MEJIA-RIVAS,<br><br>Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>Respondent. | No.   20-70667<br><br>Agency No. A094-460-822<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted July 14, 2022**
Pasadena, California

Before:  BENNETT and KOH, Circuit Judges, and KATZMANN,*** Judge.

Rogelio Mejia-Rivas ("Mejia"), a native and citizen of El Salvador, petitions

for review of the denial of his applications for asylum, withholding of removal, and

---

\*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*        The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

Convention Against Torture ("CAT") relief. We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

Mejia entered the United States at an unknown place in June 1990 without admission or parole. Since 1994, he has been convicted of various crimes: driving under the influence and causing injury; hit and run; providing false information to the Department of Motor Vehicles; driving on a suspended license; and petty theft. These convictions brought Mejia to the attention of the Department of Homeland Security, which charged him with removability as an alien present in the United States without admission or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Mejia admitted the factual allegations, conceded removability as charged, and applied for asylum, withholding of removal, and CAT relief. An Immigration Judge ("IJ") denied Mejia's applications for relief, and the Board of Immigration Appeals ("BIA") dismissed his appeal.

1. Substantial evidence supports the agency's determination that Mejia neither timely applied for asylum nor demonstrated circumstances qualifying him for an exception to the one-year deadline. Mejia last arrived in the United States in June 1990, but did not file for asylum until May 28, 2014, after he had been placed into removal proceedings. Mejia thus did not meet the one-year filing deadline.[1]

---

[1] The one-year filing deadline in this case is calculated from April 1, 1997. *See* 8 C.F.R. § 1208.4(a)(2)(ii).

*See* 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a)(2)(i)(A).

Nor, as the BIA determined, did Mejia establish circumstances qualifying him for an exception to the deadline: either "changed circumstances" materially affecting his eligibility for asylum or "extraordinary circumstances" excusing the untimely filing. 8 U.S.C. § 1158(a)(2)(D); *see also* 8 C.F.R. §§ 1208.4(a)(4), (5). Mejia acknowledged that by 2002, at the latest, he knew about asylum relief but decided not to apply because he could not afford an attorney. He now argues that the 1998 shooting death of his brother and 2003 attempted shooting of another brother support his fear of future persecution.[2] Yet Mejia waited well over a decade, until after he was placed into removal proceedings in 2014, to apply for asylum. Substantial evidence thus supports the BIA's finding that Mejia did not apply for asylum within a reasonable time of the 2003 shooting. *See* 8 C.F.R. § 1208.4(a)(4)(ii) ("The applicant shall file an asylum application within a reasonable period given those 'changed circumstances.'").

And by failing to mention extraordinary circumstances, Mejia has waived any argument about extraordinary circumstances that would excuse his untimely

---

[2] Mejia also testified that he did not apply for asylum after arriving in the United States in 1990 because he planned to return to El Salvador once the country was doing better, but he decided to stay in the United States in 2003 after the attempted shooting of his brother in El Salvador.

asylum application.[3] *See Castro-Perez v. Gonzales*, 409 F.3d 1069, 1072 (9th Cir. 2005). Substantial evidence thus supports the agency's finding that Mejia did not establish eligibility for an exception to the one-year filing deadline.

2.    Substantial evidence supports the agency's denial of withholding of removal because Mejia failed to show a nexus between the persecution he fears and a statutorily protected ground. *See* 8 U.S.C. § 1231(b)(3)(A). Mejia maintains that he fears persecution because of his membership in two particular social groups: Salvadoran ex-military members (i) who are perceived to have the same anti-gang views as some of their family members; and (ii) who interfere with gang activities and authority by opposing gang recruitment. But without citing any record evidence, Mejia argues only that he fears persecution because he is a former member of the military and his family has been vocal in refusing to join the gangs. Without record evidence to support his claim, Mejia has not shown that the record

---

[3] In his statement of facts, Mejia mentions his previous work authorization in passing, likely referring to his previous Temporary Protected Status ("TPS"). But he does not mention that he obtained TPS in 2000 and lost it in either 2004 or 2011. He also fails to make, and thus waives, any arguments related to his TPS. *See Castro-Perez*, 409 F.3d at 1072. Nor did Mejia make any such argument to the IJ at the outset of his proceedings. On that basis and because Mejia did not establish when he lost his TPS, the BIA rejected Mejia's argument about his TPS on administrative appeal. *Cf.* 8 C.F.R. § 1208.4(a)(5)(iv) (recognizing an "extraordinary circumstance[]" when "[t]he applicant maintained Temporary Protected Status . . . until a reasonable period before the filing of the asylum application).

4

compels a nexus finding.[4]

3.     The BIA correctly determined that the IJ's failure to address Mejia's imputed political opinion claim did not violate due process because it did not prejudice Mejia. Aliens alleging due process violations, like the deprivation of "a full and fair hearing of [their] claims," must show, among other things, "substantial prejudice." *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021) (citations omitted). Mejia argues that the IJ should have addressed his claim that he fears persecution based on his imputed anti-gang political opinion, but he fails to address the prejudice requirement. In any event, the record does not suggest that the gangs targeted him or his family based on an imputed anti-gang political opinion.

4.     Substantial evidence supports the agency's denial of CAT relief because Mejia failed to establish a likelihood of Salvadoran officials' complicity or

---

[4] In his statement of facts, Mejia mentions three incidents: the 1990 machete attack by gang members who threatened and tried to recruit him; the 1998 killing of his brother, Francisco, by an unknown individual; and the 2003 attempted shooting of his brother, Raphael, by an unknown individual. The BIA also noted another brother's payment of "rent" to a gang in exchange for his and their parents' protection. But "[a]n alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground." *Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010). And the record does not compel a finding that the gangs even knew that Mejia or his brothers had any anti-gang sentiment—much less that such sentiment motivated the violence.

acquiescence in any potential future torture.[5]  *See* 8 C.F.R. § 1208.18(a)(1). Mejia

argues without citing or mentioning specific record evidence that country

conditions evidence establishes sufficient corruption and complicity among

Salvadoran officials.  But in failing to marshal record evidence to support his

claim, Mejia has not shown that the record compels a finding of complicity or

acquiescence.[6]

**PETITION DENIED.**

---

[5] The BIA also determined that the harm Mejia suffered—most notably, the 1990 machete attack in which Mejia was stabbed and suffered a wound requiring seven stitches—did not constitute torture.  We need not assess that finding.

[6] Substantial evidence supports a finding of no complicity or acquiescence, regardless.  Mejia reported the 1990 attack to the police, who asked him for a description of the perpetrators, stated that they would investigate and look for them, and told him that they would call him if they caught them.  But because the perpetrators' faces had been covered, Mejia could not describe them to the police beyond that they had tattoos near their eyes and mouth.  Mejia left El Salvador five months later without having sought an update on the status of the investigation because he feared retribution from the perpetrators.  "[A] general ineffectiveness on the government's part to investigate and prevent crime will not suffice to show acquiescence." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 836 (9th Cir. 2016).  And the BIA acknowledged the country conditions evidence showing that some Salvadoran officials are corrupt and complicit in gang abuses, but not enough to establish the Salvadoran government's official acquiescence.  The record does not compel a contrary conclusion.