**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| YAN RONG ZHAO, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 11-73321 Agency No. A098-566-652 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
June 6, 2013—Pasadena, California

Filed September 6, 2013

Before: Sidney R. Thomas, Barry G. Silverman,
and Raymond C. Fisher Circuit Judges.

Opinion by Judge Thomas

## SUMMARY[*]

### Immigration

The panel granted a petition for review of the Board of Immigration Appeals' decision denying a motion to reopen filed by a Chinese citizen who asserted a fear of persecution because she is unmarried and gave birth to two children in the United States in violation of China's family planning policy.

The panel held that because the Board held petitioner to an incorrect legal standard and failed to properly consider much of her relevant evidence, it abused its discretion in denying her motion to reopen.

### COUNSEL

Theodore N. Cox (argued), New York, New York, for Petitioner.

Theodore C. Hirt (argued), Senior Litigation Counsel, and Linda S. Wernery, Assistant Director, Office of Immigration Litigation; Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Washington, D.C., for Respondent.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

THOMAS, Circuit Judge:

Yan Rong Zhao petitions for review of the denial of her motion to reopen on the basis that she is unmarried and has two children in violation of China's family planning policy, and she fears persecution if she is returned to China. Because the Board of Immigration Appeals ("BIA") held Zhao to an incorrect legal standard and failed to properly consider much of her relevant evidence, it abused its discretion in denying her motion to reopen. We grant the petition for review.

I

Yan Rong Zhao is from Duhu Town, Taishan City, Guangdong Province and entered the United States in 2005 when she was four months pregnant with her first son, Ricky. She entered the United States to flee an abusive relationship, and claimed that she feared persecution in China because she was pregnant and unmarried, a violation of China's family planning policy.

The Immigration Judge ("IJ") denied Zhao's applications for asylum, withholding of removal, and benefits under the Convention Against Torture, holding that Zhao does not have a well-founded fear of persecution and "has not met her burden of proof to present specific facts sufficient to demonstrate her eligibility for asylum." The IJ did not identify any parts of Zhao's testimony as not credible.

Zhao appealed to the BIA, and while that appeal was pending, Zhao gave birth to her second son, Benjamin, and filed a motion to remand that included affidavits from Zhao

and her brother and a copy of the notice that Zhao's brother was given by the Duhu Town Family Planning Office.[1]  The affidavit from Zhao's brother states that family planning officials also told him that Zhao "has already severely violated the family planning policy" and that "[i]f she returns to China, she is mandated to undergo a sterilization surgery."

The BIA "conclude[d] that the respondent failed to establish a prima facie case that her situation satisfies the three-prong test from *Matter of J-H-S-*" because "she failed to submit evidence sufficiently supporting a level of coercive enforcement giving rise to a reasonable possibility of

---

[1] The "Notice to Yan Rong Zhao Regarding the Family Planning Policy," dated October 26, 2009, includes the seal of the Duhu Town Family Planning Office and "is the response to Yan Rong Zhao's inquiry of the specifics contained in the regulations of the family planning policy law in China."  The Notice explained:

> In accordance with the regulations set forth in Article 24 *Guangdong Provincial Family Planning Rules and Regulations*, after giving birth to one child, a citizen will be placed in the category to wear an IUD.  A citizen should undergo a sterilization operation after having had two children.  You are currently in the United States.  But you are still a Chinese citizen and should be placed in the category to undergo sterilization.  You will be excluded from the category to undergo sterilization if you are a U.S. citizen.  If you don't meet the above criteria, you must report to the town family planning office within one week upon your return to China and undergo a sterilization operation, or you will be held responsible for the consequences herein arisen.

persecution."[2] The BIA "den[ied] the respondent's motion to remand because she failed to show that she is prima facie eligible for the relief she seeks."

Zhao filed a motion to reopen on March 30, 2011 and the BIA denied that motion. The BIA held that Zhao's motion was the second motion she had filed, and was therefore numerically barred, but that the numerical bar would not apply if Zhao could show that her motion to reopen is based on changed country conditions in China. But it held that Zhao's evidence "does not establish that there has been a material change in conditions in China since the time of her hearing before the Immigration Judge on January 3, 2008."

The BIA also held that even if the numerical bar did not apply, Zhao had not met the other requirements for reopening. She "presented insufficient evidence to meet her burden of establishing that the new evidence she seeks to offer makes her prima facie eligible for asylum." The Board assigned "minimal weight" to the Duhu Town Family Planning Office Notice provided by Zhao's brother because "that document was not an original document, was unauthenticated, and did not specify the penalty for failing to undergo sterilization." The BIA also explained that Zhao had not produced evidence establishing that she would be considered to be in violation of the law, and she has not "establish[ed] that birth control officials in Duhu town would subject her to treatment rising to the level of persecution."

---

[2] A few days after Zhao filed her motion to remand, the BIA issued its first decision without having considered the motion to remand. Because of this, the BIA eventually vacated its 2009 decision and issued a new decision on December 30, 2010.

We review the denial of a motion to reopen for abuse of discretion, so "[t]he decision of the BIA should be left undisturbed unless it is 'arbitrary, irrational, or contrary to law.'" *Chang Hua He v. Gonzales*, 501 F.3d 1128, 1131 (9th Cir. 2007) (quoting *Singh v. INS*, 295 F.3d 1037, 1039 (9th Cir. 2002)). "We cannot affirm the BIA or IJ on a ground upon which it did not rely." *Ali v. Holder*, 637 F.3d 1025, 1029 (9th Cir. 2011).

## II

The BIA erred in holding that Zhao's motion to reopen was numerically barred. Generally, "an alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceedings sought to be reopened." 8 C.F.R. § 1003.2(c)(2); *see* 8 U.S.C. § 1229a(c)(7). There are exceptions to the numerical and timeliness requirements if the respondent can establish "changed country conditions arising in . . . the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

As the government properly concedes, Zhao's first motion to remand was filed before a final administrative decision in her case, so it does not implicate 8 C.F.R. § 1003.2(c)(2). Therefore, Zhao is not required to meet the "changed country conditions" standard in 8 U.S.C. § 1229a(c)(7)(C)(ii).

III

Because Zhao's motion to reopen was not numerically barred, Zhao need only prove that the "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Zhao must also establish prima facie eligibility for the relief sought. *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 869–70 (9th Cir. 2003); *Ordonez v. INS*, 345 F.3d 777, 785 (9th Cir. 2003). The BIA erred in its consideration of the evidence submitted by Zhao.

A

In asylum cases involving China's family planning policy, the BIA reviews "the details of local family planning policies, proof that the alien violated such policies, and evidence that local enforcement efforts against the violation will rise to the level of persecution," *In re J-H-S-*, 24 I. & N. Dec. 196, 201 (BIA 2007), and looks to the "alien's local province, municipality, or other locally-defined area," *id.* at 198. The Second Circuit has approved this formulation. *Shao v. Mukasey*, 546 F.3d 138, 174 (2d Cir. 2008). In applying this standard, the BIA has focused on the governmental area appropriate to the case, often relying solely on province-level proof. *See J-H-S-*, 24 I. & N. Dec. at 202 (Fujian Province); *In re C-C-*, 23 I. & N. Dec. 899, 901 (BIA 2006) (Zhejiang Province). In other words, to establish prima facie eligibility for relief in a motion to reopen, evidence from the local province, municipality, *or* other locally defined area may be sufficient to show a well-founded fear of persecution; respondents are not required to present evidence from their town or city. A respondent could, for example, provide evidence of the provincial policy, or could show strict

enforcement of that policy in his or her city or town. This standard "recognizes the serious difficulty with which asylum applicants are faced in their attempts to prove persecution" and precisely how their situation would be viewed and the consequences they would face if returned to their home country. *Cordon-Garcia v. INS*, 204 F.3d 985, 993 (9th Cir. 2000).

Neither the BIA nor this court has previously required municipal-level proof when the petitioner presents province-level proof. Here, however, the BIA departed from that standard. In examining whether Zhao had established prima facie relief for eligibility, the BIA explained that "the respondent's evidence does not establish that birth control officials in Duhu Town would subject her to treatment rising to the level of persecution." The government agrees that Zhao's failure was in not providing "sufficient, reliable evidence from her locality – Duhu Town in Guangdong Province – to establish prima facie eligibility for asylum based on a well-founded fear of persecution based on her alleged violation of the Town's family planning policies."

An agency's decision is arbitrary and capricious if the agency fails to follow its own precedent or fails to give a sufficient explanation for failing to do so. *Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 807-08 (1973). Here, rather than apply its standard of accepting evidence from an "alien's local province, municipality, or other locally-defined area," *J-H-S-*, 24 I. & N. Dec. at 198, the agency restricted the standard of proof to the municipality without explanation. Absent some reasoned explanation appropriate to the particular circumstances, the BIA simply cannot shift its proof requirements. To do so is to subject petitioners to an administrative shell game.

Therefore, under the circumstances presented by this case, it was contrary to law and an abuse of discretion for the BIA to require Zhao to provide Duhu Town-specific evidence of local policy and enforcement. *See Chang Hua He*, 501 F.3d at 1131.

B

The BIA not only required evidence that was specific to Duhu Town, but it also seemed to require one piece of comprehensive evidence. For example, the BIA explained that several of Zhao's documents "do not specify the exceptions to the one child limit and do not discuss how children born abroad are handled." The BIA also assigned "minimal weight" to the document from Duhu Town in part because it "did not specify the penalty for failing to undergo sterilization." This rationale again subjects petitioners to a shell game in which it is unclear how a petitioner could ever produce evidence that would be sufficient to meet the burden required for a motion to reopen.[3]

The BIA and government imply that Zhao must point to one piece of evidence that conclusively proves that she would be subject to persecution if she is returned to China: this single piece of evidence would presumably have to show that (1) there is a family planning policy in Duhu Town that (2) specifically counts U.S. citizen children (3) born to unwed mothers (4) in the United States, (5) penalizes violations of

---

[3] This "heads I win, tails you lose" interpretation is similarly illustrated by the fact that the BIA had previously rejected some of Zhao's evidence because it was "apparently prepared for the purpose of litigation and is from an interested witness," Zhao's brother, but now requires evidence that "relates to individuals in [Zhao's] precise situation."

the family planning policy with forced sterilization, and that (6) if Zhao refuses sterilization, the penalty for refusing involves physical force or coercion that rises to the level of persecution.

The government has identified no authority requiring one conclusive piece of evidence, and we decline to impose such a requirement. Instead, "[a] motion to reopen must state the new facts to be proved and must be supported by affidavits or other evidentiary material." *Ordonez*, 345 F.3d at 785 (quoting *In re S-V-*, 22 I. & N. Dec. 1306, 1307 (BIA 2000), *overruled on other grounds by Zheng v. Ashcroft*, 332 F.3d 1186, 1194–96 (9th Cir. 2003)). The BIA erred by faulting individual pieces of evidence for lacking elements necessary to show prima facie eligibility for relief. Instead, the BIA should have looked at the evidence as a whole to determine whether Zhao had satisfied her burden.

Though the BIA does not have to address every piece of evidence, it is required to consider the evidence "'in its entirety' . . . and where its failure to do so could have affected its decision, remand is appropriate." *Singh v. Gonzales*, 494 F.3d 1170, 1172 (9th Cir. 2007) (quoting *Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005)). "While the Board has broad discretion in ruling on a motion to reopen, it must show proper consideration of all factors, both favorable and unfavorable, in determining whether to grant a motion to reopen." *Toufighi v. Mukasey*, 538 F.3d 988, 993 (9th Cir. 2007).

Zhao marshaled significant evidence in support of her motion, some of which was improperly rejected by the BIA. For example, the BIA assigned only "minimal weight" to the notice from the Duhu Town Family Planning Office because

"that document was not an original document, was unauthenticated, and did not specify the penalty for failing to undergo sterilization."

However, in its own Appeals Practice Manual, the BIA instructs petitioners *not* to file original documents. Specifically, the BIA Practice Manual states: "The Board strongly recommends that the parties submit copies of supporting documents, not originals, unless instructed otherwise" because "[t]he Board does not as a practice return original documents, nor can the Board ensure the return of any original documents submitted to it." Executive Office for Immigration Review, *Board of Immigration Appeals Practice Manual* at 40 (June 10, 2013), *available at* http://www.justice.gov/eoir/vll/qapracmanual/BIAPractice Manual.pdf. The record does not reflect that Zhao was ever instructed to produce the original document, so she should not have been faulted for providing a copy rather than the original.

As to the authentication, "a petitioner's failure to obtain government certification of a foreign public document's authenticity is not necessarily a bar to admission of the document." *Vatyan v. Mukasey*, 508 F.3d 1179, 1183 (9th Cir. 2007). To the extent that the BIA rejected the Duhu Town document solely because it was not authenticated pursuant to regulation, this was error. *See id.* (rejecting the proposition that foreign government documents must be authenticated by official certification pursuant to 8 C.F.R. § 287.6 and holding that a document can be authenticated by any evidence sufficient to support a finding that the item is what the proponent claims it is).

Aside from the fact that it was a copy and unauthenticated, the BIA did not explain whether or why it found the document to be unreliable.**[4]** "[H]ow realistic is it to expect the petitioner to be able to obtain an authenticated copy of a communication from a local official that states an intention to violate Chinese national policy . . . against resorting to sterilization to punish violations of the one-child policy or deter future violations?" *Qiu Yun Chen v. Holder*, 715 F.3d 207, 211 (7th Cir. 2013). It therefore stands to reason that "failing to authenticate [foreign documents] may not serve as a basis for an adverse credibility determination without some evidence of forgery or other unreliability. "Here, [the BIA articulated] no evidence of forgery or unreliability, and it was inappropriate for the [agency] to give the [document] 'diminished weight.'" *Zhou v. Gonzales*, 437 F.3d 860, 866 (9th Cir. 2006) (citation omitted).

The BIA also discredited most of the evidence submitted by Zhao because the evidence "does not establish changed conditions material to the respondent's applications for relief" because it does not mention Duhu Town. But as we explained above, Zhao was not required to show changed country conditions, nor was she required to provide Duhu Town-specific evidence. The BIA also discredited evidence because it "does not indicate that it relates to individuals in her precise situation," but the BIA did not articulate what it meant by "her precise situation" and how this differs from its criticism regarding the children being born abroad.

---

**[4]** The third reason given for assigning only "minimal weight" to the document was because "that document . . . did not specify the penalty for failing to undergo sterilization." But as we discussed above, each piece of evidence need not conclusively prove that Zhao is prima facie eligible for relief.

Zhao tendered significant material evidence, such as the Congressional-Executive Commission on China, *Annual Report 2010* (Oct. 10, 2010) ("2010 C.E.C.C. Report").[5] The 2010 C.E.C.C. Report recognizes that "all pregnancies that occur without an official permit, including first pregnancies, are regarded by the government as 'out-of-plan,'" 2010 C.E.C.C. Report at 119; and the heavily relied-upon State Department report, *China: Profile of Asylum Claims and Country Conditions* (May 2007) ("2007 Profile") explained that "it is illegal in almost all provinces for a single woman to have a child." 2007 Profile at 110. Zhao has two sons, had her children "out of plan," and is not married. The 2010 C.E.C.C. Report explains that "[v]iolators of the policy [requiring a birth permit before having a child] are routinely punished with fines, and in some cases, subjected to forced sterilization, forced abortion, arbitrary detention, and torture. In some cases surgical sterilization may be required of Chinese women following the birth of their second child." 2010 C.E.C.C. Report at 116 (footnote omitted). "When women reach the state-imposed limit on number of births, local authorities often mandate surgical sterilization to prevent 'out-of-plan' pregnancies." *Id.* at 119. Guangdong is one of several provinces that has "vowed to 'by all means necessary, stabilize the low birth level.'" *Id.* at 118.

---

[5] The 2010 C.E.C.C. Report "was not available and could not have been discovered or presented at the former hearing" before the IJ. 8 C.F.R. § 1003.2(c)(1). The 2010 C.E.C.C. Report was dismissed by the BIA because it discusses abortion regulations in another city and consists of "statements of policy." But just as a document's failure to address all of the elements of Zhao's claim does not diminish its value, nor is it diminished by the fact that it discusses additional information not relevant to Zhao. It is also unclear what the BIA meant when it rejected "statements as statements of policy."

Additionally, the BIA did not address at all the affidavit from Zhao's brother, which explained that he went to the Family Planning Office in their hometown and "asked if my younger sister would suffer from forced sterilization upon her return to China. The family planning staff told me the following: Your younger sister, Yan Rong Zhao, has already severely violated the family planning policy which requires wearing an IUD after one child and sterilization after two children. If she returns to China, she is mandated to undergo a sterilization surgery." "[F]acts presented in affidavits supporting a motion to reopen must be accepted as true unless inherently unbelievable," *Bhasin v. Gonzales*, 423 F.3d 977, 987 (9th Cir. 2005), and the BIA failed to address the affidavit, much less find it inherently unbelievable.

As to whether children born in the United States could violate the family planning policy, the 2007 Profile explains that "our understanding is that the parents of U.S.-born children who choose to register their children as Chinese permanent residents . . . would not be able to exclude these children from the number of children allowed under Chinese family planning policy, and this could trigger sanctions and economic penalties under the relevant laws and regulations." 2007 Profile at 115. Zhao also presented evidence that "new and stricter provincial regulations went into force on January 1, 2009" in Guangdong province, and these regulations apply to "returned overseas Chinese (*guiqiao*), relatives of Chinese nationals living abroad (*qiaojuan*), [and] residents of Guangdong who have children abroad . . . ."[6]

---

[6] The BIA did not abuse its discretion in refusing to credit Dr. Flora Sapio's report insofar as it contradicts the 2007 Profile, but the factual evidence of the 2009 regulations does not contradict the earlier 2007 Profile.

If a woman does not agree to be sterilized, "[i]n some areas, coerced sterilization is accomplished through punitive action taken against the family members of targeted women, which can include extended periods of detention." *Id.* at 119. The BIA also noted that the 2007 Profile is consistent with evidence explaining that China is in violation of a "provision [that] prohibits funding to any organization or program 'which supports or participates in the management of a program of coercive abortion or involuntary sterilization.'"

In short, Zhao tendered substantial evidence in support of her motion to reopen that was unaddressed or improperly rejected by the BIA.

IV

In sum, the BIA improperly held that the motion to reopen was numerically barred, erred in restricting the evidence Zhao could provide, and erred in failing to consider the evidence tendered. We grant the petition for review and remand for further proceedings consistent with this opinion.

**PETITION GRANTED. REMANDED.**