OPINION
BYBEE, Circuit Judge:
Petitioner Carlos Bringas-Rodriguez is a citizen of Mexico and a gay man who was *1175 sexually abused by family members and a neighbor in Mexico. He challenges the BIA’s decision denying his applications for asylum, withholding of removal, and Convention Against Torture (CAT) protection, and denying his motion to remand to the IJ in light of his recent HIV diagnosis. Relying on our decision in Castro-Martinez v. Holder, 674 F.3d 1073 (9th Cir.2011), the BIA found that Bringas failed to show that the Mexican government was unwilling or unable to control those who perpetrated such acts. We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition.
I
Petitioner, Bringas-Rodriguez (Brin-gas), was born and raised in Tres Valles, Veracruz, Mexico. He began to realize that he was attracted to men at age six, and by age ten he considered himself gay. He is now openly gay and is HIV-positive. As a child, he suffered physical abuse at the hands of his father, who would tell him to “Act like a boy, you’re not a woman!” and to “Do things a man does.” His father also abused Bringas’s mother and siblings, but he says he was abused “most of all ... because [he] was different.”
Bringas was later sexually abused by his uncle, cousins, and a neighbor. His uncle began the abuse when Bringas was four and continued the abuse every two or three months until he turned twelve. When Bringas turned seven, his cousins began to abuse him on a monthly basis as well. Bringas testified that when he turned eight, his uncle admitted to him that he was sexually abusing him because Bringas was gay. He further recalled that his abusers “never called [him] by [his] name but called [him] fag, f-g faggot, queer and laughed about it.”
Bringas first cáme to the United States with his mother and stepfather in 2002 when he was twelve, and he lived with them in Kansas for five months. Bringas was undocumented. He then moved back to Mexico because he was “troubled” over hiding his sexuality and history of abuse, and he wanted to live with his grandmother. Once back in Mexico, however, the abuse continued. His uncle, cousins, and a neighbor raped him in his early teens. He never reported the abuse to the police, believing such a complaint would be frivolous, and he did not tell his family until years later, fearing that his abusers would harm his mother or grandmother.
In 2004, at age fourteen, Bringas returned to the United States to live with his mother and stepfather in Kansas and “to escape [his] abusers.” In August 2010, Bringas was convicted of “Contributing to the Delinquency of a Minor” in Colorado; essentially, he was drinking at his house and a friend brought over a minor. Brin-gas spent ninety days in jail, where he attempted suicide. DHS filed a Notice to Appear in September 2010.
In February 2012, Bringas filed an application for asylum, withholding of removal, and relief under the CAT, alleging that he was raped by his uncle, cousins, and neighbor while living in Mexico. He explained that he feared returning to Mexico because he would be persecuted for being gay and the police would ignore his complaints. The IJ denied all applications for relief. He denied Bringas’s asylum claim because it was untimely.[1] With respect to *1176 withholding, the IJ found that Bringas had suffered sexual abuse at the hands of his uncle, cousins, and neighbor, but concluded that the abuse, while “horrendous,” did not constitute past persecution “on account of’ a protected status. The IJ found that “perverse sexual urges” motivated the abusers, and not Bringas’s sexual orientation. The IJ also observed that Bringas never reported his abuse to an adult or to the Mexican police and that there was no evidence that Mexican authorities were unwilling to offer protection.
Turning to the risk of future persecution, the IJ looked at Country Reports for Mexico for 2009 and 2010 and found that, despite a few specific accounts of persecution of homosexuals in Mexico, the country as a whole — and especially in Mexico City — has made significant advances with respect to gay people. Accordingly, Brin-gas could relocate to a place like Mexico City without risking possible future abuse. So, the IJ found, Bringas did not show a “more likely than not possibility of persecution on account ... of his membership in a particular social group of male homosexuals.”
The IJ also denied relief under the CAT on the grounds that Bringas offered insufficient evidence that the government routinely turns a blind eye to allegations of sexual abuse of children. As a result, Bringas could not prove that “torture in the future by the government, or with the acquiescence of the government” was likely-
The BIA affirmed. It denied Bringas’s asylum claim on the merits, assuming the application was timely filed. The BIA concluded that Bringas failed to establish past persecution because (1) he could not show that he was abused on account of a protected ground, and (2) he had not demonstrated that the government was unwilling or unable to control his abusers. Bringas was thus not entitled to a presumption of future persecution. The BIA also found that Bringas did not have a well-founded fear of future persecution because he failed to show a “pattern or practice” of persecution against gays in Mexico. Citing our opinion in Castro-Martinez v. Holder, 674 F.3d 1073, 1082 (9th Cir.2011), the BIA explained that no “widespread brutality against homosexuals or ... criminalization of homosexual conduct [exists] in Mexico.” Additionally, the BIA discussed Mexico’s improved treatment of homosexuals over the years: “Mexico has taken numerous positive steps to address the rights of homosexuals, including legalizing gay marriage in Mexico City and prosecuting human rights violations against homosexuals.”
The BIA also rejected Bringas’s withholding of removal and CAT claims. With respect to withholding, it noted that because Bringas “failed to satisfy the lower burden of proof required for asylum, it follows that he has also failed to satisfy the higher standard of eligibility required for withholding of removal.” With respect to CAT, the BIA found no clear error in the IJ’s determination that Bringas failed to show that he will more likely than not be tortured in Mexico “by or with the acquiescence” o,f the Mexican government.
Finally, the BIA rejected Brin-gas’s argument that his case be remanded to the IJ in light of Bringas’s recent HIV diagnosis. Bringas’s brief to the BIA explained that, since his hearing before the *1177 IJ, he had been diagnosed with HTV. He argued that “this fact is significant because it now places [him] in a more vulnerable position should he be returned to Mexico.” The BIA declined to remand Bringas’s case to the IJ for further consideration because Bringas had “not provided any additional country conditions evidence or specific arguments regarding how his status as an HIV positive homosexual changes the outcome of his case.” He filed a timely Petition for Review of the BIA’s dismissal and sought a stay pending review. We granted the stay and now deny the petition for review.[2]
II
Bringas argues that the BIA erred in denying his asylum and withholding of removal claims. “To be eligible for asylum, an alien must demonstrate that he is unable or unwilling to return to his home country because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or a political opinion.” Castro-Martinez v. Holder, 674 F.3d 1073, 1080 (9th Cir.2011) (citing 8 U.S.C. § 1101 (a)(42)(A)). The requirements for a withholding claim are similar, except that the alien must prove a “clear probability” of persecution on account of a protected characteristic. 8 U.S.C. § 1231(b)(3)(A). If a petitioner cannot establish his eligibility for asylum, his withholding claim necessarily also fails. Zehatye v. Gonzales, 453 F.3d 1182, 1190 (9th Cir.2006).
Substantial evidence supports the BIA’s determinations that Bringas failed to establish past persecution or a well-founded fear of future persecution, and he is thus ineligible for asylum. See Castro-Martinez, 674 F.3d at 1080 (9th Cir.2011); I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)) (noting that we must uphold the BIA’s factual findings if “supported by reasonable, substantial, and probative evidence on the record considered as a whole”).[3] Because Bringas failed to meet his burden to establish eligibility for asylum, he also fails the higher burden required to obtain withholding of removal. Castro-Martinez, 674 F.3d at 1082 (citing Gomes v. Gonzales, 429 F.3d 1264, 1266 (9th Cir.2005)).

A. Past Persecution

Asylum petitioners may produce evidence of their past persecution, which “creates a presumption of a fear of future persecution.” Hanna v. Keister, 506 F.3d 933, 937 (9th Cir.2007); see 8 C.F.R. § 1208.13(b)(1). To establish past persecution, Bringas must show (1) that he has suffered harm “on the basis of [a] protected ground[]” and (2) that the harm was “inflicted either by the government or by individuals or «groups the government is unable or unwilling to control.” Castro-Martinez, 674 F.3d at 1080. The BIA concluded that Bringas failed to satisfy both prongs. We will only address the second of these prongs. Even if we thought that the record compelled the conclusion that Bringas was abused on ac *1178 count of his sexual orientation, Bringas provided insufficient evidence that the government was unwilling or unable to prevent that abuse.
Because the sexual abuse Brin-gas suffered was not inflicted by government actors, he must “show that the government was unable or unwilling to control his attackers.” Id. at 1078. “In determining whether the government was unable or unwilling to control violence committed by private parties, the BIA may consider whether the victim reported the attacks to the police.” Id. at 1080 (citing Baballah v. Ashcroft, 367 F.3d 1067, 1078 (9th Cir.2004)); see id. (“[W]here the persecutor is not a state actor, we consider whether an applicant reported the incident to police, because in such cases a report of this nature may show governmental inability to control the actors.”) (quoting Rahimzadeh v. Holder, 613 F.3d 916, 921 (9th Cir.2010) (internal quotation marks omitted)). Nevertheless, petitioners are not required to report persecution to the police in order to show that the government is unable or unwilling to control their abusers. Id. at 1080-81 (“We have never held that any victim, let alone a child, is obligated to report a sexual assault to the authorities, and we do not do so now.”),.
Where a petitioner does not report the abuse to the authorities, however, there is a “gap in proof about how the government would have responded,” and the petitioner bears the burden to “fill in the gaps” by showing how the government would have responded had he reported the abuse. Id. at 1081 (internal quotation marks and alterations omitted). It is insufficient for a petitioner to state his belief that the government would do nothing about a report of abuse. Rather, a petitioner may show, “[a]mong other avenues,” that “private persecution of a particular sort is widespread and well-known but not controlled by the government or ... that others have made reports of similar incidents to no avail.” Id. (quoting Rahimzadeh, 613 F.3d at 922) (internal quotation marks omitted).
We agree with the BIA that Bringas has not met his burden to prove the government’s unwillingness to respond. The BIA relied on our decision in Castro-Martinez v. Holder, 674 F.3d 1073, 1080-81 (9th Cir.2011), in determining that Bringas had not met his burden here. The facts in Bringas’s case are very similar to those in Castro-Martinez. In Castro-Martinez, Castro, a gay, HIV-positive Mexican man, sought asylum on account of a credible history of sexual abuse suffered because of his sexual orientation. Id. at 1078-79. Castro also had failed to report the abuse to Mexican officials, and the BIA ultimately concluded that he had failed to demonstrate that “Mexican authorities would have ignored the rape of a young child or that authorities were unable to provide a child protection against rape.” Id. at 1081; see also id. at 1079. We denied Castro’s petition for review.
Bringas attempts t.o distinguish Castro-Martinez. He argues that while Castro offered nothing more than a conclusory statement “that he believed the police would not have helped him,” id. at 1081, Bringas “provided such gap-filling evidence” by giving a reason why he never reported his abuse to the Mexican police: He testified that “a couple” of his gay friends told him “that they got raped, they got beat up, like abuse, and they went to the police [in Veracruz, Mexico] and they didn’t do anything” except “laugh [in] their faces.”[4]
*1179 We agree with the dissent that Castro-Martinez left open the possibility that Bringas could meet his burden of proving that the government was unable or unwilling to control their abusers by “showing that others have made reports of similar incidents to no avail.” Id. (citation and internal quotation marks omitted). But we part ways with the dissent’s assertion that Castro-Martinez “qualifies” a “gay petitioner ... for asylum” as a matter of course, provided that he submits “country reports documenting official persecution on account of sexual orientation” and “evidence” — unsubstantiated hearsay or otherwise — that “others have made reports of similar incidents to no avail.” Dissenting Op. at 1191 (quoting Castro-Martinez, 674 F.3d at 1081). Castro-Martinez sets forth no such mechanical formula for obtaining asylum, nor does our holding there support the proposition that any evidence of other reports of similar incidents, no matter how unreliable, is sufficient to satisfy this “other avenue” of establishing that a government is unable or unwilling to prevent persecution. Implicit in Castro-Martinez’s holding is that, in order for this method of proof to be successful, the evidence must be sufficient.
Here, we agree with the IJ and the BIA that Bringas’s evidence was not sufficient. Looking first to the country reports Brin-gas submitted, neither the 2009 nor the 2010 report mentions any instances of discrimination or persecution in his home state of Veracruz, Mexico. Indeed, the two reports, produced by the U.S. State Department to survey the state of sexual orientation discrimination across a country of 122 million people, note only one specific example of government persecution on the basis of sexual orientation in Mexico. The dissent highlights this incident in detail, but does not explain why the IJ reviewing this documentation should have concluded that a single example “establish[es] that government discrimination ... persistís].” Dissenting Op. at 1189. Nor does the dissent seek to draw any connections from this incident, which occurred- in 2008, to circumstances in Tres Valles, a town nearly 300 miles away.
Rather, the country reports Brin-gas provided to the IJ highlighted “gay pride marches in cities across the country,” the largest drawing 400,000 participants. Additionally, the report described the expansion of marriage equality in Mexico City, and detailed a ruling from the Mexican Supreme Court requiring Mexico’s states to recognize legally performed marriages performed elsewhere, a ruling, we note, that was made five years before the United States Supreme Court reached a similar conclusion. In sum, the country reports submitted to the IJ simply do not make a persuasive case that the Mexican government was unwilling or unable to protect Bringas.[5]
*1180 Turning next to Bringas’s testimony, Bringas provided very few details about his friends’ negative experiences with police in Veracruz. He offered no details about his friends’ accounts — no names, ages, indication of the nature of their relationship to Bringas, information on how or to whom they reported their abuse, or any evidence showing that these nameless friends actually reported any abuse to the Mexican authorities. Even if we could fully credit Bringas’s friends’ statements, there is no evidence connecting general police practices in the state or city of Veracruz with the specific police practices in Bringas’s town of Tres Valles.[6] Without something to suggest that the police in Tres Valles would respond in the same way as the police described in Bringas’s friends’ reports, we decline his invitation to compel the BIA to paint all the police in Veracruz with the same broad brush.
The dissent resists this conclusion by stating that because Bringas’s friends reported discrimination by police in Veracruz and “Tres Valles is in the state of Veracruz,” any “geographic objection[s]” to Bringas’s evidence must fail. Dissenting Op. at 1190-91. To draw a parallel, the dissent’s argument is that if someone reports discrimination at the hands of police in “California,” it would be fair to assume that police in San Diego, Eureka, or Santa Barbara would act in accordance with that report. We refuse to make this unfounded logical leap. The dissent is correct that in light of the difficulty of gathering evidence of persecution, we “adjust[ ] the evidentia-ry requirements” for asylum seekers, id. at 1191 (quotation marks omitted); we do not, however, forego them completely, and reference to vague reports from anonymous friends cannot overcome the lack of any corroborating evidence.[7]
*1181 By highlighting the factual gaps in Brin-gas’s description of his friends’ reports, the dissent suggests that we inappropriately discount his testimony despite the fact that the IJ found his testimony “credible.” See Dissenting Op. at 1190. Not so. We agree that as “a general rule, because the Immigration Judge did not render an adverse credibility finding, we must accept [Bringas’s] factual testimony as true” and that Bringas’s “testimony includes hearsay evidence from ... anonymous friend[s]” that “may not be rejected out-of-hand.” Gu v. Gonzales, 454 F.3d 1014, 1021 (9th Cir.2006). Similarly, we do not challenge the “well established” principle, Dissenting Op. at 1190, that “hearsay [evidence] is admissible in immigration proceedings,” Rojas-Garcia v. Ashcroft, 339 F.3d 814, 823 (9th Cir.2003).
However, these two propositions -do not compel the result pressed for by the dissent. As we have repeatedly held “the absence of an adverse credibility finding does not prevent us from considering the relative probative value of hearsay.” Gu, 454 F.3d at 1021; see also Singh v. Holder, 753 F.3d 826, 835 (9th Cir.2014); Sharma v. Holder, 633 F.3d 865, 870-71 (9th Cir.2011). Indeed, in Gu, we explained that “statements by the out-of-court declarant may be accorded less weight by the trier of fact when weighed against non-hearsay evidence.” 454 F.3d at 1021. Here, without many details to flesh out the context of Bringas’s friends’ hearsay statements, their relative probative value is rather low.
To be clear, we are not, as the dissent charges, “diseount[ing]” Bringas’s hearsay testimony. Dissenting Op. at 1190. Nor are we requiring a certain level of “specificity” in Bringas’s description of his friends’ out-of-court reports. Id. at -. Instead, we are making what, we think, are commonsense observations: A more detailed description should be afforded greater weight than a less detailed description, and hearsay statements with details that can be corroborated are more probative than hearsay statements that do not include any verifiable details.
The dissent’s response to these conclusions brings the very problem this hearsay evidence poses into sharp relief. In light of Bringas’s hearsay testimony and submitted country reports,-the dissent chastises the IJ’s statement that “ ‘we certainly do not have any evidence whatsoever’ that Mexican authorities were unwilling to protect” Bringas as plainly “wrong.” Dissenting Op. at 1189. The dissent only quoted the IJ in part. Here is the full statement:
[W]e certainly do not have any evidence whatsoever that the police in Mexico or the authorities do not take any action whatsoever to offer some type of protection against the abuse of children, sexually, whether the sexually-abused child is a male or female, or whether the abuser is a male or a female.
(emphasis added).
The IJ’s finding is quite correct. There is no doubt that Bringas did not offer any evidence suggesting that Mexican police refused to protect abused children. The submitted country reports make no reference to it, and because Brin-gas’s hearsay statement was so lacking in detail, we have no idea how old his “friends” were who reported abuse to the police in Veracruz. Because Bringas’s testimony was so vague, even the dissent’s attempts to bolster its veracity get tangled up in its factual shortcomings. Rather, the full statement of the IJ only demonstrates how firmly in line the IJ and BIA were with this court’s precedent. See Cas *1182 tro-Martinez, 674 F.3d at 1081 (affirming the BIA’s reliance on the lack of “evidence in the record that Mexican authorities would have ignored the rape of a young child or that authorities were unable to provide a child protection against rape”).[8]
As the IJ recognized, Bringas’s allegations are not just about discrimination against gay • and lesbian Mexicans — they are about child molestation. Bringas has put forward no evidence that Mexico tolerates the sexual abuse of children, or that Mexican officials would refuse to protect an abused child based on the gender of his or, her abusers. Instead, substantial evidence supports the BIA’s finding that Bringas failed to prove that the government would be unwilling or unable to control his abusers, and Bringas’s bare hearsay assertions from friends of unknown ages are insufficient to overturn the BIA’s contrary conclusion, which was based on other evidence in the record. Accordingly, we hold that Bringas failed to establish his past persecution and is therefore not entitled to a presumption of a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1).

B. Well-Founded Fear of Future Persecution

Alternatively, in the absence of evidence of past persecution, a petitioner may simply provide evidence of a well-founded fear of future persecution. “To establish a well-founded fear,” Bringas must show “that his fear of persecution is subjectively genuine and objectively reasonable.” Castro-Martinez, 674 F.3d at 1082 (citing Ahmed v. Keisler, 504 F.3d 1183, 1191 (9th Cir.2007)). “As there 'was no adverse credibility determination, we accept that [Bringas’s] fear of future persecution was genuine.” Id. (citing Li v. Holder, 559 F.3d 1096, 1107 (9th Cir.2009)). In order to show that his fear of future persecution was “objectively reasonable,” Bringas has two avenues. He may demonstrate: (1) “that he was a member of a disfavored group against which there was a systematic pattern or practice of persecution,” or (2) that he belongs to a “disfavored group” and has an individualized risk of being “singled out for persecution.” Id.; Sael v. Ashcroft, 386 F.3d 922, 925 (9th Cir.2004); see 8 C.F.R. § 1208.13(b)(2)(iii).
Bringas’s “pattern or practice of persecution” argument lacks merit, and he forfeited his argument that he will be “singled out” as a member of a “disfavored group” when he failed to raise it before the BIA.
1. Pattern or Practice of Persecution
Bringas argues that there is a pattern or practice of persecution of gay men in Mexico. Despite some evidence of violence against gays in Mexico, Castro-Martinez forecloses this argument. In Castro-Martinez, we rejected the claim that “the Mexican government systematically harmed gay men and failed to protect them from violence.” 674 F.3d at 1082. Although we acknowledged evidence of discrimination and attacks, we explained that country conditions reports showed that “the Mexican government’s efforts to prevent violence and discrimination against homosex *1183 uals.... ha[d] increased in recent years,” and, we noted, “Mexican law prohibits several types of discrimination, including bias based on sexuality, and it requires federal agencies to promote -tolerance.” Id. (recognizing the Mexican government’s 2005 “radio campaign to fight homophobia” and noting the various country reports’ reflections of the “ongoing improvement of police treatment of gay men and efforts to prosecute homophobic crimes”).
Here, the BIA made findings similar to those in Castro-Martinez and found that the situation for gay men in Mexico is improving. It first cited Bromfield v. Mukasey, 543 F.3d 1071, 1078 (9th Cir.2008), a case where we held that there was a pattern or practice of persecution against gay men in Jamaica — a country which criminalized homosexual conduct and prosecuted individuals under the law; the evidence there also showed numerous cases of violence and widespread brutality against persons based on sexual orientation. Then the BIA turned to Bringas’s case and stated that unlike Bromfield:
[T]he record here does not demonstrate widespread brutality against homosexuals or that there is any criminalization of homosexual conduct in Mexico.... To the contrary, the record shows that Mexico has taken numerous positive steps to address the rights of homosexuals, including legalizing gay marriage in Mexieo City and prosecuting human rights violations against homosexuals.
Bringas offers no evidence showing that there has been a change in conditions in Mexico since we decided Castro-Martinez. Accordingly, we are bound by our holding in Castro-Martinez, and the BIA’s determination that no pattern or practice of persecution exists is supported by substantial evidence.[9]
2. Singled Out for Persecution as a Member of a Disfavored Group
Even without evidence of a pattern or practice of persecution, Bringas could still establish a well-founded fear if he could demonstrate a particularized risk that he will be singled out for persecution if returned to Mexico. Bringas argues that he has been singled out in the past for mistreatment for his membership in the disfavored group of homosexual men, so he “has a ‘strong’ individualized risk of future harm.” The government argues that Brin-gas forfeited this claim when he failed to raise it before the BIA. We agree that Bringas failed to exhaust this argument before the BIA.
Bringas failed to argue that he would be singled out for persecution as a member of a disfavored group in his brief to the BIA.[10] He consequently has forfeited this claim. See Abebe v. Mukasey, 554 F.3d 1203, 1208 (9th Cir.2009) (en banc) *1184 (per curiam) (holding that an alien is “deemed to have exhausted only those issues he raised and argued in his brief before the BIA”); see also Alvarado v. Holder, 759 F.3d 1121, 1126 n. 4, 1128 (9th Cir.2014) (“Although [a] petitioner need not ... raise [his] precise argument in administrative proceedings, ... [he] must specify which issues form the basis of the appeal.”) (alterations and emphasis in original) (citations and internal quotation marks omitted). He argues that by raising his similar claim of a pattern or practice of anti-gay persecution, he necessarily exhausted his argument before the BIA. Not so. The pattern or practice argument is separate and distinct from the singled out/disfavored group argument, and we analyze them separately. E.g., Wakkary v. Holder, 558 F.3d 1049, 1061-62 (9th Cir.2009). Unlike the pattern or practice analysis, the singled out/disfavored group analysis requires proof of an individualized risk of harm. See 8 C.F.R. § 1208.13(b)(2)(iii); see also Castro-Martinez, 674 F.3d at 1082; Wakkary, 558 F.3d at 1060-62; Sael, 386 F.3d at 925.
Our holding in Castro-Martinez forecloses Bringas’s “pattern or practice of persecution” argument, and he failed to exhaust his argument that he will be “singled out” as a member of a “disfavored group.” Bringas has not demonstrated a well-founded fear of future persecution, and, accordingly, we deny the petition with respect to asylum and withholding of removal.
Ill
Bringas’s claim under the CAT fails because he did not show that he would more likely than not be tortured by or with the acquiescence of the Mexican government if he is removed to Mexico. See Garcia-Milian v. Holder, 755 F.3d 1026, 1031 (9th Cir.2014). “To qualify for CAT relief, an alien must establish that ‘it is more likely than not that he ... would be tortured if removed to the proposed country of removal.’ ” Id. at 1033 (quoting 8 C.F.R. § 208.16(c)(2)). The BIA found “no clear error in the [IJ’s] determination that [Bringas] did not demonstrate that he will more likely than not be tortured in Mexico by or with the acquiescence ... of an official of the Mexican government.”
Even if Bringas’s past experiences constituted torture, the BIA is not required “to presume that [he] would be tortured again because of his own credible testimony that he had been subjected to torture as a ... child.” Konou v. Holder, 750 F.3d 1120, 1125 (9th Cir.2014). This is especially true where “the factors that precipitated [Bringas’s] mistreatment as a child would be less relevant to a ‘selfsuffi-cient homosexual adult.’ ” Id. at 1126. Here, the IJ determined that Bringas could likely relocate to a different part of Mexico, such as Mexico City, where the population appears more accepting of gays, and the IJ noted the complete lack of evidence indicating that the Mexican government was aware of any torture taking place. The IJ concluded that Bringas’s reports showing “instances of mistreatment of homosexuals in Mexico” were not “sufficient to establish the burden of proof requirement of a more likely than not possibility of torture.” The same evidence that supported the BIA’s dismissal of the pattern-or-practice claim also supports the IJ’s and BIA’s conclusions that Bringas failed to establish a likelihood of torture: Conditions in Mexico are insufficiently dangerous for gay people to constitute a likelihood of government-initiated or -sanctioned torture. See Castro-Martinez, 674 F.3d at 1082. And because substantial evidence supported the BIA’s denial of CAT relief, we deny Bringas’s petition with respect to his claim under the CAT.
*1185 IV
Finally, the BIA did not abuse its discretion in finding that Bringas’s HIV diagnosis, standing alone, does not require a remand to the IJ. In Bringas’s brief to the BIA, he moved to remand the case because, not long after the IJ’s decision issued, he discovered that he is HIV positive. The BIA denied his motion to remand.
Denials of motions to remand are reviewed for abuse of discretion. Malhi v. I.N.S., 386 F.3d 989, 993 (9th Cir.2003). “The BIA abuses its discretion if its decision is ‘arbitrary, irrational, or contrary to law.’ ” Romero-Ruiz v. Mukasey, 538 F.3d 1057, 1062 (9th Cir.2008) (quoting Lopez-Galarza v. I.N.S., 99 F.3d 954, 960 (9th Cir.1996)); Konstantinova v. I.N.S., 195 F.3d 528, 529 (9th Cir.1999) (“The BIA abuses its discretion when it fails to offer a reasoned explanation for its decision, distorts or disregards important aspects of the alien’s claim.”).
The BIA gave a rational explanation for its denial of Bringas’s motion to remand based on his HIV diagnosis. In requesting a remand, Bringas merely noted in one short paragraph at the end of his brief to the BIA that his diagnosis is a “significant [fact] because it now places [him] in a more vulnerable position should he be returned to Mexico.” The BIA rejected this argument because Bringas did not provide “any additional country conditions evidence or specific arguments regarding how his status as an HIV positive homosexual changes the outcome of his case.” The BIA also noted that the lack of access to HIV drugs is a problem suffered not only by homosexuals but by the Mexican population as a whole. See Castro-Martinez, 674 F.3d at 1082. Because the BIA offered a reasoned explanation and its decision was neither arbitrary nor irrational, we hold that the BIA did not abuse its discretion in denying Bringas’s motion to remand.
V
In sum, we hold that substantial evidence supported the BIA’s denial of Brin-gas’s claims for asylum, withholding of removal, and relief under the CAT. We also conclude that the BIA did not abuse its discretion in denying Bringas’s motion to remand.
Concurrently, we grant the motion of the Public Law Center, Lambda Legal Defense and Education Fund, the National Immigrant Justice Center, the Center for HIV Law and Policy, HIV Law Project, Immigration Equality, Disability Rights Legal Center, and the Asian . & Pacific Islander Wellness Center to file a brief as Amici Curiae in support of Bringas. We deny Bringas’s motion to take judicial notice of facts beyond the administrative record. See 8 U.S.C. § 1252(b)(4)(A); Singh v. Ashcroft, 393 F.3d 903, 905-06 (9th Cir.2004).
PETITION DENIED.

. Bringas entered the United States in November 2004 but did not file an asylum application until April 2011, well beyond the one-year deadline. The IJ acknowledged that being an unaccompanied minor entering the country may qualify as an "exceptional circumstance” that excuses late filing, but even assuming that Bringas was an unaccompanied minor upon entering the United States, *1176 his application was still untimely because he waited years after turning eighteen to file it. Bringas had argued, however, that in this case the age of adulthood was twenty-one, not eighteen, which would make his asylum application timely because it was filed before his twenty-first birthday. But the IJ rejected this reasoning, finding no evidence to suggest that asylum officers use twenty-one and not eighteen to determine the legal disability excuse.

. - “We review questions of law in immigration proceedings de novo.” Romero-Mendoza v. Holder, 665 F.3d 1105, 1107 (9th Cir.2011). We review the denials of asylum, withholding of removal, and CAT relief for substantial evidence. Garcia-Milian v. Holder, 755 F.3d 1026, 1031 (9th Cir.2014).

. We cannot resolve Bringas's asylum claim on untimeliness grounds because the BIA ignored this procedural defect when it "assume[d] arguendo that the respondent filed a timely asylum application.” See Abebe v. Gonzales, 432 F.3d 1037, 1041 (9th Cir.2005) (en banc) ("When the BIA has ignored a procedural defect and elected to consider an issue on its substantive merits, we cannot then decline to consider the issue based upon this procedural defect.”).

. ' Bringas did not provide a clear picture of when he spoke with these friends. We know it was at some point "when [he] was living in Kansas,” but he lived in Kansas twice. His uncle and cousins abused him from age four to twelve. Then, he moved to Kansas with his *1179 mother and stepfather at age twelve, but five months later, he moved back to Mexico, where the abuse continued. At age fourteen, Bringas moved back to Kansas again. Thus, Bringas would have heard his friends' accounts of their abuse in Veracruz after at least some (if not all) of Bringas’s own abuse had already occurred.

. Seemingly aware that Bringas’s evidence demonstrating government discrimination or persecution on the basis of sexual orientation was somewhat thin, the dissent instead highlights the ongoing "societal discrimination” referenced in the country reports. Dissenting Op. at 1188 (quoting the 2010 country report). While certainly troubling, negative social attitudes in one’s home country cannot form the basis for an asylum claim. See Ghaly v. I.N.S., 58 F.3d 1425, 1431 (9th Cir.1995) ("Discrimination ... as morally reprehensible as it may be, does not ordinarily amount to persecution.’ ”). If that was the case, LGBT Americans in many parts of this country, unfortunately, would have a valid claim to seek asylum in other parts of the world, including Mexico.
Indeed, the United Nations recognizes Mexico’s "history of protecting asylum-seekers” *1180 and notes that it has "long been a signatory of the 1951 Refugee Convention and its 1967 Protocol.” UNHCR Hails Mexico as New Refugee Law Comes Into Force, U.N. High Comm’n for Refugees (Jan. 28, 2011), http://www. unhcr.org/4d42e6ad6.html. In 2011, President Felipe Calderón signed new legislation to ensure that Mexico’s asylum system conformed to international standards. Id. Three years later, Mexico adopted the "Brazil Declaration and Plan of Action,” an international agreement committed to "the protection of refugees',” including “particularly vulnerable groups” like "lesbian, gay, bisexual, transgender, and intersex people.” See Brazil Declaration and Plan of Action, Dec. 3, 2014, at 8, http://www.acnur.org/t3/fileadmin/scripts/doc. php?file=t3/fileadmin/ Documen-tos/BDL/2014/9865. And this year, a United Nations report noted that Mexico had established a "specialized hate crime prosecution unit[ ],” developed a "new judicial protocol to guide adjudication of cases involving human rights violations on grounds of sexual orientation,” implemented specialized training for police officers, and officially designated May 17 as “National Day Against Homophobia.” See U.N. High Commissioner for Human Rights, Discrimination & Violence Against Individuals Based on Their Sexual Orientation & Gender Identity, ¶¶ 40, 74, U.N. Doc. A/HRC/29/23 (May 4, 2015), http://www.un. org/en/ga/search/view_doc.asp?symbol=A/ HRC/29/23 &referer=/english/& ?Lang=E.

. We note that the Mexican state of Veracruz supports a population of nearly eight million residents divided into more than two hundred distinct municipalities. See Perspectiva Estadística Veracruz de Ignacio de la Llave, Instituto Nacional de Estadística y Geografía, Dec. 2011, at 9-10, 14, http://www.inegi.org.mx/ est/contenidos/espanol/sistemas/perspeclivas/ perspectiva-ver.pdf. The city of Veracruz is roughly eighty miles away from Bringas's town of Tres Valles. See Mapquest, http:// www.mapquest.com/maps?lc=Veracruz&l y=MX&2c=Tres% 20Valles&2y=MX (last visited Nov. 3, 2015).

. The dissent's citation to Yan Rong Zhao v. Holder, 728 F.3d 1144 (9th Cir.2013), to support its position is inapposite. There, we observed that "evidence from the local province, municipality, or other locally defined area may be sufficient to show a well-founded fear' of persecution; respondents are not required to present evidence from their town or city.” Id. at 1147-48 (emphasis in original). But at issue in Zhao were family planning *1181 policies memorialized in a written notice from the "Family Planning Office.” Id. at 1146. Had Bringas produced roughly comparable evidence of Mexico's, Veracruz’s, or Tres Valles’s policy or practice, we would not be having 'this exchange.

. The dissent also argues that "[n]either the BIA nor the IJ mentioned Bringas-Rodri-guez's testimony about what his friends had told him.” Dissenting Op. at 1189. True enough. But that does not mean the IJ and the BIA did not consider or weigh that evidence. This court has repeatedly found that an IJ’s decision is not required' "to discuss every piece of evidence” presented by a petitioner. Almaghzar v. Gonzales, 457 F.3d 915, 922 (9th Cir.2006); see also Cole v. Holder, 659 F.3d 762, 771 (9th Cir.2011) ("That is not to say that the BIA must discuss each piece of evidence submitted.”). Here, Bringas’s evidence is not sufficient to compel a contrary result.

. Bringas argues that the BIA applied the wrong standard to his pattern-or-practice claim because it cited to withholding cases in discussing the asylum claim. But, as the government noted and as Bringas acknowledges in his reply, the withholding and asylum standards do not differ in any relevant respect as to his pattern-or-practice claim.

. In his brief to the BIA, Bringas argued that the IJ erred in failing to find that Bringas had a well-founded fear of persecution, stating that a well-founded fear can be shown by a pattern or practice of persecution. The sections of our cases that he cited concerned only pattern-or-practice evidence. One of the cases he cited, Wakkary v. Holder, 558 F.3d 1049, 1061 (9th Cir.2009), discussed the singled out/disfavored group analysis at length, but not on the page that Bringas cited. He never argued that he would be singled out in the future as a member of a disfavored group. The BIA expressly recognized that Bringas failed to make this argument, observing in a footnote that Bringas “does not argue that his claim falls within the 'disfavored group’ analysis espoused by the Ninth Circuit.”